[No. 28508-4-I.    Division One.    August 3, 1992.]

STEVEN A. LOCKHART, *Appellant,* v. R.R. (BOB) GREIVE,
ET AL, *Defendants,* JOHN W. MURPHY,
ET AL, *Respondents.*

*Thomas Cline,* for appellant.
*Robert B. Gould,* for respondents.

SCHOLFIELD, J. — Steven A. Lockhart appeals from an order dismissing his breach of contract and professional negligence claims against his former attorneys, John W. Murphy and David A. Welts. Respondents/cross appellants Murphy and Welts appeal the amount of attorney's fees and costs awarded them by the trial court under RCW 4.84.185 and CR 11. We affirm the summary judgment of dismissal and reverse the award of attorney's fees and costs to respondents.

### FACTS

On March 20, 1983, Lockhart sustained personal injuries when he lost control of his motorcycle at a railroad crossing in Snohomish County. He contacted several attorneys and was ultimately referred to attorney John W. Murphy in early February 1986. Murphy was associated in the practice of law with David A. Welts. Lockhart and Murphy subsequently met, briefly discussed the case, and signed an agreement entitled "Contract to Hire Attorney", wherein Murphy agreed, subject to certain conditions, to represent Lockhart. At that time, fewer than 2 months remained before the third anniversary of Lockhart's accident — March 20, 1986.

In the contract signed by Murphy and Lockhart, Murphy agreed to advance all costs on behalf of the client until the case was concluded, and Lockhart agreed to pay all such costs. The agreement also provided that if at any time the claim appeared to the attorney to be without merit, the attorney would have the right to so advise the client and withdraw from the case.

Murphy proceeded to investigate the case by contacting two attorneys with whom Lockhart had previously consulted, reviewing an investigator's memorandum containing notes from interviews with a witness to the accident and a Washington state patrolman, and reviewing measurements of the scene and diagrams prepared by the investigator. Murphy believes that he also visited the scene as well. Murphy reviewed a letter to Lockhart from a previous attor-

ney that indicated a concern that a jury could conclude that Lockhart lost control of his motorcycle due to his drinking.

In late February 1986, Murphy instructed his secretary to inform Lockhart that he would not represent him in the action, but would file a summons and complaint in order to toll the statute of limitations. On March 3, 1986, Lockhart called from Hawaii and spoke with Murphy's secretary. She told him that Murphy would not be representing him, but that a complaint would be filed. It is unclear as to whether there was any agreement to the arrangement at that time.

On March 4, 1986, Lockhart called the firm once again and spoke with Murphy directly. According to Lockhart, Murphy told him he was underfinanced to do any additional work on the case and did not have the funds to hire expert witnesses. Lockhart testified that he understood, as of March 4, that Murphy would not represent him in the action, but would file a complaint to toll the statute of limitations. During a March 14, 1986, phone conversation, Murphy reiterated to Lockhart that he and Welts would not be representing him.

Lockhart returned to Seattle and met with R.R. (Bob) Greive of the law firm of Greive and Serrin on March 18, 1986. Greive agreed to take the case, had Lockhart sign a contract of employment, and instructed Lockhart to retrieve his file from Murphy and Welts.

Murphy filed a summons and complaint in the action on March 18, 1986. Burlington Northern Railroad Company, Snohomish County, and the State of Washington were named as defendants. *Lockhart v. Burlington Northern R.R.*, 50 Wn. App. 809, 810, 750 P.2d 1299, *review denied*, 111 Wn.2d 1022 (1988). At that time, Murphy contacted Harold Green of Greive and Serrin, and Green told Murphy that Greive and Serrin would be representing Lockhart. Murphy informed Green that the statute of limitations was due to expire and that he was in the process of filing a complaint on Lockhart's behalf. Green stated that Greive and Serrin would be filing claims with the State of Washington and Snohomish County.

On March 20, 1986, the 3-year anniversary of Lockhart's accident, Lockhart returned to the offices of Welts and Murphy to pick up his file. Lockhart assured Murphy that he had retained new counsel to represent him and that they would be filing claims against Snohomish County and the State of Washington. At that time, Lockhart was given a letter from Murphy dated March 20 that summarized Murphy's involvement in the case, including Murphy's restatement that he would not be representing Lockhart. The letter was signed as received by Lockhart. In another letter dated April 4, 1986, Murphy informed Lockhart that he had a limited time in which to serve all parties.

On March 28, 1986, Greive and Serrin attempted service of summons and complaint upon Burlington Northern. This service would have been timely if valid, but was held invalid because the person served was not an authorized agent of Burlington Northern. *Lockhart*, 50 Wn. App. at 812. Neither the State of Washington nor Snohomish County were served with process within 90 days of the filing of the complaint. Thus, the action against the State and Snohomish County was barred by the statute of limitations. *Lockhart*, 50 Wn. App. at 811.

Greive and Serrin filed a summons and second amended complaint on August 18, 1986, and served all defendants. However, the 90-day period following filing of the first summons and complaint expired on or about June 18, 1986.

Lockhart filed the present action in January 1989 against Murphy, Welts, Greive, and Serrin. In December 1990, Lockhart moved for summary judgment against all four defendants on the issue of negligence. Murphy and Welts also moved for summary judgment and for an award of expenses and costs under CR 11 and RCW 4.84.185 on grounds that Lockhart's action against them was frivolous.

The trial court granted Lockhart's motion for summary judgment against Greive and Serrin, but dismissed Lockhart's claims against Murphy and Welts. The trial court granted the motion of Murphy and Welts for sanctions and expenses pursuant to CR 11 and RCW 4.84.185.

It appears to be undisputed that the case proceeded to trial in March 1991 with Greive and Serrin as the sole defendants. They were ultimately found liable to Lockhart for damages of $1,781,100. Greive and Serrin satisfied this judgment on April 29, 1991 by payment of $1,500,000, and Lockhart is seeking to collect the remaining $281,100 from Murphy and Welts. Lockhart now appeals the dismissal of his claims against Murphy and Welts, and Murphy and Welts appeal the amount of expenses and sanctions awarded them by the trial court.

## SUMMARY JUDGMENT

■ When reviewing a summary judgment, the appellate court engages in the same inquiry as the trial court. *Salmon For All v. Department of Fisheries*, 118 Wn.2d 270, 279, 821 P.2d 1211 (1992). Summary judgment is appropriate only if reasonable persons could reach but one conclusion, and there is no genuine issue as to any material fact. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 394-95, 823 P.2d 499 (1992). In deciding a motion for summary judgment, all reasonable inferences must be made in favor of the nonmoving party. *Butler*, at 395.

## BREACH OF CONTRACT

Lockhart contends that Murphy's failure to perform and manner of withdrawal from the case are evidence of a bad faith exercise of the escape clause. He bases his argument in large part on the claim that Murphy did not conduct a good faith investigation before withdrawing as counsel. The record demonstrates considerably more investigation than Lockhart concedes in his brief. Lockhart does not specifically deny the acts of investigation asserted by Murphy.

Murphy's stated reason for withdrawal was that he was not in a position to advance the expenses that would be required to fully develop the evidence. This could be interpreted as an expression of his opinion that advancing substantial sums was not justified by the merits of the case.

This issue is not critical to the ultimate resolution of this case because the record is clear beyond dispute that Lock-

hart did not at any time object to Murphy's withdrawal and proceeded without delay to employ another law firm to represent him.

██ The facts show a mutual rescission as a matter of law. Restatement (Second) of Contracts § 283, comment *a* (1981). Employment of other counsel, which is inconsistent with continuance of a former attorney-client relationship, "shows an unmistakable purpose to sever the former relationship." *Belli v. Shaw*, 98 Wn.2d 569, 577, 657 P.2d 315 (1983). Furthermore, Lockhart's breach of contract claim could only become a material issue if there is a basis for holding that it was a proximate cause of Lockhart's claim being barred by the statute of limitations. The record before this court makes it clear that it was not. Murphy had terminated the attorney-client relationship, and Greive and Serrin took over responsibility for the case approximately 90 days before the claim was barred by the statute of limitations.

FAILURE TO COMPLY WITH CR 71

██ It is conceded that Murphy did not follow the requirements of CR 71 for withdrawal by notice. Nor did he file a Notice of Withdrawal and Substitution, as permitted by CR 71(d). This created the unusual situation whereby Murphy, having signed the original complaint, remained an attorney for Lockhart on the record, even though it was clearly understood by all persons involved that Lockhart was being represented by Greive and Serrin. Lockhart argues that Murphy is liable to him because he was an attorney of record at the time the statute of limitations ran on his claims. The flaw in Lockhart's argument is that, at the time the statute ran, the circumstances were the same as they would have been had Murphy withdrawn in full compliance of CR 71. Greive and Serrin would be the attorneys actively representing Lockhart, and Murphy would have been taking no active part in the case. The attorney-client relationship between Lockhart and Murphy had been effectively terminated prior to the running of the statute of limitations. The failure to comply with CR 71 did not impede in any

way the ability of Greive and Serrin to make timely service of process on one or more of the defendants.

Strict compliance with CR 71 would have caused Lockhart to be notified that he had a right under CR 71 to file a written objection to the withdrawal. Had such a written objection been filed, withdrawal could then have been accomplished only by an order of the court. We hold that would not have made a difference in this case. Lockhart has given no indication that he would have objected, nor has he stated any ground of objection that would have justified a denial by the court of Murphy's requested withdrawal. The circumstances were such that there was no prejudice to Lockhart by permitting the withdrawal.

RPC 1.15(b) permits a lawyer to withdraw "if withdrawal can be accomplished without material adverse effect on the interests of the client".

█ Material adverse effects were avoided here by Murphy in that he filed a summons and complaint prior to the running of the 3-year statute and thereby created a 90-day window in which jurisdiction over the defendants could have been obtained by the service of process within that 90 days. Murphy gave ample notice to Lockhart to enable him to protect his interests and took care to advise Lockhart and his new attorneys, Greive and Serrin, of the necessity of timely service of process on the defendants. Knowledge by Greive and Serrin of this necessity is demonstrated by the attempted service within the 90-day period of a summons and complaint on the Burlington Northern Railroad Company. While the necessity of serving the State of Washington and Snohomish County was known to Greive and Serrin, the record does not reflect any reason for their failure to serve process on these governmental entities. The conclusion is inescapable: The failure of Murphy to comply with CR 71 in withdrawing as counsel was not a contributing cause to the running of the statute of limitations against Lockhart's claims.

A similar issue was faced by the court in *Barry v. Ashley Anderson, P.C.*, 718 F. Supp. 1492 (D. Colo. 1989). In *Barry,*

the plaintiff (Barry) terminated his attorney-client relationship with his attorney, Francis, due to Francis' conflict of interest. *Barry*, at 1493. Although Barry then retained Anderson as counsel, Francis never formally withdrew and Anderson filed no formal entry of appearance. *Barry*, at 1493. The trial court later issued Francis a notice that the case would be dismissed if not prosecuted, and Francis notified Anderson of this fact. *Barry*, at 1493-94. Nevertheless, the case was dismissed for a failure to prosecute. *Barry*, at 1494.

Barry then brought an action for malpractice against Francis. He contended that as the attorney of record, Francis had a continuing duty to represent him, was negligent in doing so, and as a result his claim was dismissed. *Barry*, at 1494. The court disagreed, holding as a matter of law that Barry terminated his attorney-client relationship with Francis when Anderson undertook the representation. *Barry*, at 1494. The court held that any residual duties Francis owed to Barry by virtue of his failure to formally withdraw from the case were satisfied when he gave notice to Anderson that the case was subject to dismissal for failure to prosecute. *Barry*, at 1494. The fact that Francis was discharged, rather than withdrew, does not change the basis of the decision which relies heavily on the fact of termination of the attorney-client relationship.

## Award of Sanctions

Lockhart objects to the award of sanctions against his attorney, and Murphy and Welts object and cross-appeal the trial court's action in reducing the amount requested as a sanction under CR 11 and RCW 4.84.185. We will not address the issue raised by the cross appeal because we conclude no sanctions should have been imposed.

■ ■ A plaintiff may be subject to CR 11 sanctions if three conditions are met: (1) the action is not well grounded in fact, (2) it is not warranted by existing law, and (3) the attorney signing the pleading has failed to conduct a reasonable inquiry into the factual or legal basis of the

744

action. *John Doe v. Spokane & Inland Empire Blood Bank*, 55 Wn. App. 106, 780 P.2d 853 (1989). The decision to award attorney fees as a sanction for a frivolous action is left to the discretion of the trial court, and the court's decision will not be disturbed absent a showing of abuse of discretion. *Clarke v. Equinox Holdings, Ltd.*, 56 Wn. App. 125, 783 P.2d 82, *review denied*, 113 Wn.2d 1001 (1989).

■ Similarly, RCW 4.84.185 provides that

[i]n any civil action, the court . . . may, upon written findings . . . that the action . . . was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense. . . .

We have found Lockhart's breach of contract claim to be without merit, but hold it was not frivolous. Lockhart's counsel was faced with a situation where his client had hired two other law firms to represent him in a personal injury case, but somehow the statute of limitations was allowed to run and bar the claim. While the claim against Greive and Serrin appeared the stronger from the outset, counsel would naturally be reluctant not to include as defendant an attorney who was still an attorney of record for Lockhart at the time the statute ran. If he did not sue Murphy and Welts, he could have faced a strenuous effort by Greive and Serrin to place the fault on Murphy and Welts — the "empty chair" defense.

Furthermore, there were no Washington cases to guide Lockhart's counsel as to the position the court might ultimately take in respect to the liability of an attorney who did not follow the rules for withdrawal or substitution of counsel and remained an attorney of record at the time the statute of limitations barred the claim. The possibility of divided responsibility being developed as the case progressed could not be totally disregarded.

■ ■ We see no evidence Lockhart's attorney did not conduct a reasonable inquiry prior to filing the malpractice action. It turned out that the action against Murphy and

Welts was not well grounded in fact, but this ultimate development could have been unclear at the time the action was filed. To draw the conclusion that at the time the complaint was filed it was not warranted by existing law does not appear justified under circumstances where defendant did not comply with the rules and the effect of that noncompliance in a legal malpractice action had not been decided or even discussed in any existing Washington cases. Thus, this case had aspects of a case of first impression that presented debatable issues. Under these circumstances, the claim was not frivolous.[1] *Moorman v. Walker*, 54 Wn. App. 461, 466-67, 773 P.2d 887, *review denied*, 113 Wn.2d 1012 (1989).

We affirm the dismissal of Lockhart's claims against Murphy and Welts, but reverse the imposition of sanctions against Lockhart and/or his attorney. Murphy and Welts' claim for attorney's fees on appeal is denied.

PEKELIS and KENNEDY, JJ., concur.

Reconsideration denied August 31, 1992.

---

[1]Lockhart contends that Murphy and Welts' claim for CR 11 sanctions at trial was itself frivolous. We have considered his arguments on this question and find them to be without merit.