[No. 29006-1-I. Division One. December 14, 1992.]

BILL HARRINGTON, *Appellant*, v. MICHELLE L. PAILTHORP, *Respondent*.

902

*Bill Harrington,* pro se.

*Joel E. Wright, Steven G. Wraith,* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for respondent.

SCHOLFIELD, J. — Bill Harrington brought this action against his ex-wife's attorney, Michelle Pailthorp, under a variety of legal theories, including legal malpractice. Harrington appeals the trial court's dismissal of his claims on Pailthorp's motion for summary judgment. We affirm.

## FACTS

Bill Harrington and Melissa Thompson were married in 1972 and divorced in March 1987. They had two minor children at the time of their divorce. Thompson was awarded primary residential custody of the children with Harrington to have liberal visitation rights. The decree stated that both parents were fit and proper persons to be awarded custody and further provided that residential custody and visitation would be by mutual agreement.

On August 14, 1987, Thompson filed a motion to modify the decree of dissolution previously entered. She was represented in that action by defendant/respondent herein, Michelle Pailthorp. This motion was vigorously opposed by Harrington, who was represented by counsel during the modification proceeding. A final order modifying the decree was entered January 25, 1989. Under the terms of this order, Harrington and Thompson agreed to ongoing mediation with a counselor who had the power to alter residential and visitation arrangements in accord with the children's best interests.

Following resolution of the custody dispute, Harrington brought this suit against Pailthorp. Acting pro se, he named himself and his two minor children as plaintiffs.[1] In part, Harrington claimed that Pailthorp, in representing Thompson in the modification action, failed to adequately investigate the facts and law and ignored conflicts of interest between Thompson and the children. Harrington further claimed that Pailthorp had violated her duty of candor toward the tribunal, as well as other court rules.

---

[1] Among the legal theories cited by Harrington were abuse of process, malicious prosecution, interference with advantageous and contractual relations, emotional distress, fraud, invasion of privacy, constitutional torts, professional malpractice, and restitution.

By order dated May 15, 1991, the children's claims were dismissed without prejudice after Harrington failed to pay the costs of a guardian ad litem and attorney to represent them. On June 28, 1991, Pailthorp moved for summary judgment and counterclaimed for frivolous prosecution. The trial court granted Pailthorp's motion, and awarded her $15,843.82 in attorney's fees and costs pursuant to CR 11. The court, in findings of fact and conclusions of law, found all of Harrington's claims to have been advanced frivolously and without good cause.

In this appeal, Harrington challenges only the dismissal of his malpractice claim against Pailthorp and the imposition of sanctions against him under CR 11.[2] He does not appeal any of the trial court's factual findings in support of the CR 11 sanctions, nor does he appeal the order dismissing his children's claims.

■ ■ In evaluating a summary judgment, this court makes the same inquiry as the trial court. *Touchet Vly. Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 341, 831 P.2d 724 (1992). A motion for summary judgment should be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Harris v. Harris*, 60 Wn. App. 389, 392, 804 P.2d 1277, *review denied*, 116 Wn.2d 1025 (1991). A case presenting only issues of law is properly resolved on summary judgment. *Harris*, at 392.

### LEGAL MALPRACTICE

Harrington contends that this court should hold Pailthorp liable for malpractice under any one (or all) of the

---

[2] Harrington has abandoned all other legal theories asserted in his amended complaint. Although he claims that his opening brief "was meant to be inclusive of all causes of action filed in [his] Amended Complaint" (Reply Brief of Appellant, at 2), Harrington failed to discuss any claims other than those pertaining to legal malpractice and CR 11 sanctions in his opening brief. The other legal issues or theories cannot be raised for the first time in a reply brief. RAP 10.3(c); *Lewis v. Mercer Island*, 63 Wn. App. 29, 31, 817 P.2d 408, *review denied*, 117 Wn.2d 1024 (1991). Further, Harrington has failed to devote any argument to the other claims.

following theories: (1) third party beneficiary theory; (2) multifactor balancing approach; (3) assumption of duty theory; (4) trustee liability theory; and (5) nonconflict of interest theory. Pailthorp responds that she owed Harrington no duty, and that none of the exceptions to the general rule of third party nonliability are applicable. Pailthorp claims that there was a complete failure of proof as to Harrington's legal malpractice claims.

■ The general rule requires that to establish a claim for legal malpractice, a plaintiff must prove the following elements: (1) the existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred. *Hizey v. Carpenter*, 119 Wn.2d 251, 260, 830 P.2d 646 (1992).

■ In this case, there are no facts to support the existence of an attorney-client relationship between Pailthorp and Harrington, and Harrington has conceded that Pailthorp at no time directly represented him.[3] There was no privity of contract between the two, and thus Pailthorp cannot be liable for malpractice to Harrington — a nonclient — under the traditional rule. *See Bohn v. Cody*, 119 Wn.2d 357, 364-65, 832 P.2d 71 (1992). However, Washington recognizes two exceptions which allow for attorney liability to nonclients despite the absence of privity. *See Stangland v. Brock*, 109 Wn.2d 675, 680, 747 P.2d 464 (1987); *Bohn*, at 365. First, an attorney may be held liable for negligence to third party beneficiaries of an attorney-client relationship. *Bohn*, at 365. Second, an attorney may be held liable under a multifactor balancing test developed in Cali-fornia. *Bohn*, at 365.

The third party beneficiary theory has been used by courts in holding that an attorney who drafts a will for his client owes some duty to the intended beneficiaries of the

---

[3]The trial court, in its findings of fact and conclusions of law regarding CR 11 sanctions, found that Pailthorp never represented Harrington as legal counsel. Harrington has not assigned error to this finding.

will. *See Stangland*, 109 Wn.2d at 681. The plaintiff must prove that he or she was intended to benefit from the established attorney-client relationship. *Stangland*, at 681.

Harrington claims that he is a third party beneficiary to Pailthorp's actions regarding the affairs of the minor children. He asserts that a parenting plan governing parents and minor children (which presumably was a component of the divorce decree) is an automatic third party beneficiary situation. However, Pailthorp did not represent either Harrington or Thompson in their 1987 dissolution. Pailthorp represented Thompson only in the subsequent modification proceeding. Harrington has produced no evidence that he was an intended beneficiary of that attorney-client relationship. Harrington retained his own counsel for the modification action, and was not a third party beneficiary to the agreement between Thompson and Pailthorp.

The other exception to the privity requirement is the multifactor balancing test. Under this test, six factors are evaluated:

> the extent to which the transaction was intended to affect the plaintiff; the foreseeability of harm to the plaintiff; the degree of certainty that the plaintiff suffered injury; the closeness of the connection between the defendant's conduct and the injury; the policy of preventing future harm; and the extent to which the profession would be unduly burdened by a finding of liability. The inquiry under this multifactor test has generally focused on whether the attorney's services were intended to affect the plaintiff.

*Bohn v. Cody*, 119 Wn.2d at 365 (quoting *Stangland*, at 680). While the *Bohn* standard at first glance would appear quite broad, the court's actual holding in the case indicates a narrower application of the rule. In *Bohn*, an attorney discussed a loan transaction with the potential lender — who was unrepresented by counsel — although the attorney already represented the borrowers. The attorney told the lender that he represented the borrowers and could not represent her, but he did not advise the lender to seek independent counsel. Moreover, his incomplete responses to Bohn's inquiries were potentially misleading. *See Bohn*, at

359, 367. The lender brought suit against the attorney after the borrowers failed to repay the loan. *Bohn*, at 362.

The *Bohn* court, applying the multifactor balancing test, found that issues of fact existed as to whether the attorney owed the lender a duty. *Bohn*, at 359, 367.

In this case, there is no allegation that Pailthorp ever met with or discussed the divorce with Harrington while he was unrepresented. The modification proceeding was adversarial from the outset. Harrington was represented by separate counsel. *Bohn* has no application in this case.

In addition to the above recognized theories, Harrington invites the court to approve of several others. He first asserts that Pailthorp can be held liable under an "assumption of the duty" theory of liability. Harrington contends that the custodial parent has several duties under RCW 26.09.004(3) and that Pailthorp assumed these duties when she gratuitously represented his children in the modification action. In her zealous representation of Thompson, Harrington claims, Pailthorp ignored her duty to the children and failed to protect the children's familial bonds with the noncustodial parent.

The central flaw in Harrington's theory is his contention that Pailthorp represented his children in the modification action. It is from this "gratuitous representation", Harrington claims, that Pailthorp's duty arose. However, there is no evidence that Pailthorp represented the children, gratuitously or otherwise. It is the function of an independent attorney or guardian ad litem to represent the children's interests. *See* RCW 26.33.020(10); RCW 26.09.110. As Harrington concedes in his own affidavit, a guardian ad litem was in fact appointed during the course of the modification proceeding.

Harrington next contends that Pailthorp can be held liable under a theory of "trustee liability". He claims that Thompson served as a "trustee" for the children, and that Pailthorp failed to advise Thompson of her trustee status and further failed to understand her own status as a trustee originating from her oath as an attorney.

Even assuming that Thompson had certain duties as a trustee of her children, there is no plausible legal theory under which Harrington could recover from Pailthorp for her alleged failure to advise Thompson of those duties. If a failure to provide such advice would be actionable at all, the claim would be Thompson's alone. Harrington's contention that Pailthorp violated her oath of attorney is similarly baseless.

■ Harrington also proposes a "nonconflict of interest" theory.[4] Under this theory, Harrington appears to claim that Pailthorp had a conflict of interest in representing Thompson *and* the children in the modification proceeding. As earlier discussed, Pailthorp did not represent the children, and thus there was no conflict. Harrington further claims that Pailthorp violated his rights in failing to seek the appointment of an independent attorney or guardian ad litem for the children. However, it is the function of the court — not counsel for either parent — to make such appointments. *See* RCW 26.09.110; 26.33.020(10). *See also Wildermuth v. Wildermuth*, 14 Wn. App. 442, 446, 542 P.2d 463 (1975) (court did not abuse discretion in failing to appoint attorney for children or utilize statutory investigative procedures in child custody modification proceeding). In any event, as previously noted, a guardian ad litem was appointed on September 23, 1988, several months prior to the end of the modification proceeding.

■ In making his various claims, Harrington relies on provisions of the Rules of Professional Conduct in an effort to establish that Pailthorp owed him a duty. Harrington makes reference to several RPC provisions, including rules pertaining to confidentiality (*see* RPC 1.6); conflict of interest (*see* RPC 1.7); and an attorney's duty to disclose facts to the tribunal (*see* RPC 3.3(2)). However, as our Supreme Court recently made clear in *Hizey v. Carpenter*, 119 Wn.2d 251, 258-59, 830 P.2d 646 (1992), an attorney's violation of RPC

---

[4]We interpret Harrington's claim here to be that an attorney has a duty to avoid conflicts of interest.

provisions does not give rise to an independent cause of action against the attorney. Nor may an RPC violation be used as evidence of an attorney's malpractice.[5] *Hizey*, at 260. Even if Harrington could show Pailthorp violated any RPC's, he would have no claim against her solely on that basis.

We conclude that Harrington failed to establish under any theory that Pailthorp owed him a duty of care. For that reason, the trial court properly dismissed Harrington's claims.

## SANCTIONS

Harrington claims that CR 11 sanctions were not warranted because the lawsuit was not frivolous. He contends that the lawsuit was not filed for harassment or any other improper purpose as required by CR 11.

■ A pro se plaintiff may be subject to CR 11 sanctions if three conditions are met: (1) the action is not well grounded in fact, (2) it is not warranted by existing law, and (3) the party signing the pleading has failed to conduct a reasonable inquiry into the factual or legal basis of the action. *See* CR 11; *Lockhart v. Greive*, 66 Wn. App. 735, 743-44, 834 P.2d 64 (1992); *John Doe v. Spokane & Inland Empire Blood Bank*, 55 Wn. App. 106, 110, 780 P.2d 853 (1989). The decision to award attorney's fees as a sanction for a frivolous action is left to the discretion of the trial court, and the court's decision will not be disturbed absent a showing of abuse of discretion. *Clarke v. Equinox Holdings, Ltd.*, 56 Wn. App. 125, 132, 783 P.2d 82, *review denied*, 113 Wn.2d 1001 (1989); *Lockhart*, at 744.

Similarly, RCW 4.84.185 provides that

> [i]n any civil action, the court . . . may, upon written findings . . . that the action . . . was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense. . . .

---

[5]Under *Hizey*, experts on an attorney's duty of care may still base their opinion on an attorney's failure to conform to an ethics rule. *Hizey*, at 265. However, "the expert must address the breach of the *legal* duty of care, and not simply the supposed breach of the ethics rules." *Hizey*, at 265.

As an initial matter, Harrington has failed to assign error to any of the court's factual findings regarding sanctions.[6] He claims in his reply brief that his "notice of appeal" included all issues relating to the sanctions judgment, including "by reference" the findings of fact. This is clearly insufficient to preserve a claim of error under RAP 10.3(g).[7] In neither his opening nor reply brief does Harrington identify the factual findings he claims are in error. Unchallenged factual findings are verities on appeal. *Levine v. Jefferson Cy.*, 116 Wn.2d 575, 582 n.2, 807 P.2d 363 (1991).

Sanctions were warranted in this case under either CR 11 or RCW 4.84.185. CR 11 was violated because the action was wholly unsupported by fact or law, and Harrington failed to conduct a reasonable inquiry into the factual or legal basis for his claims. It is not enough that Harrington believed, after exhaustive research of law review articles, that his claim was meritorious.[8] The reasonableness of an attorney's inquiry is

---

[6]While findings of fact are superfluous on summary judgment and an appellant need not assign error to such findings, *see Concerned Coupeville Citizens v. Coupeville*, 62 Wn. App. 408, 413, 814 P.2d 243, *review denied*, 118 Wn.2d 1004 (1991), this is not the case with respect to findings and conclusions in support of CR 11 sanctions. Sanctions under CR 11 are reviewed under the abuse of discretion standard. *In re Lasky*, 54 Wn. App. 841, 852-54, 776 P.2d 695 (1989).

[7]RAP 10.3(g) states as follows in pertinent part:
"A separate assignment of error for each instruction which a party contends was improperly given or refused must be included with reference to each instruction or proposed instruction by number. A separate assignment of error for each finding of fact a party contends was improperly made or refused must be included with reference to the finding or proposed finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto."

[8]CR 11 allows for a "good faith" exception for claims that, while not warranted by existing law, amount to a "good faith argument for the extension, modification, or reversal of existing law . . .". CR 11. However, Harrington points to no facts in the record which show that he admitted to the trial court that, although existing authority did not support his claim, he was urging the court to extend the pertinent attorney duties in the interests of public policy. *See John Doe v. Spokane & Inland Empire Blood Bank*, 55 Wn. App. at 122. Harrington's attempt on appeal to fit his claims within the "good faith" exception comes too late. *See Cascade Brigade v. Economic Dev. Bd.*, 61 Wn. App. 615, 624, 811 P.2d 697 (1991) (raising good faith argument for first time in defense of motion for CR 11 sanctions is no

evaluated by an objective standard, *see Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992), and no reasonable attorney would have made the wholly unsubstantiated allegations contained in this case.[9]

Harrington contends that CR 11 (and RCW 4.84.185) contain *conjunctive* requirements that the lawsuit be both frivolous *and* advanced without reasonable cause and for improper purpose. He contends that sanctions are improper here because the trial court did not find that he advanced this lawsuit with frivolous motives or to harass Pailthorp. His position is incorrect.

■ As stated in *Bryant*, "CR 11 addresses two types of problems relating to pleadings, motions and legal memoranda: filings which are not 'well grounded in fact and . . . warranted by . . . law' and filings interposed for 'any improper purpose'." *Bryant*, at 217 (quoting CR 11). This case is of the former type. Therefore, CR 11 sanctions are appropriate if Harrington's complaint lacks a factual or legal basis *and* the person signing the complaint failed to conduct a reasonable inquiry into the factual and legal bases of the claim. *See Bryant*, at 220.

■ The trial court found that all of Harrington's claims were "frivolously advanced causes of action without any fac-

---

substitute for conducting preliminary research to determine whether claim has a proper foundation in law or fact).

[9]For the first time in his reply brief, Harrington cites the case of Gwinn v. Sedwick, King County cause 91-2-18818-1 (June 13, 1991), as evidence that a reasonable attorney would indeed have filed a case such as this one. From a reading of the Gwinn complaint, the case does appear to contain certain similarities to this case. Harrington claims that Gwinn was dismissed on summary judgment and is pending appeal before this court. Nonetheless, the filing of Gwinn does not show that Harrington's conduct was reasonable in this case. All that is contained in the record is the Gwinn complaint itself. There is no indication of the evidence presented in that case, nor is there any evidence as to why the case was dismissed, who prevailed, or even whether sanctions were requested. Pailthorp has been given no opportunity to respond to this allegedly similar case because it was not cited by Harrington until his reply brief.

tual basis nor any rational legal argument supporting [them]."[10] The court further found that Harrington "should have known that the claims he advanced were without merit." This latter finding is the equivalent of a statement that Harrington failed to conduct a reasonable inquiry into the basis of his claim. No intent to harass Pailthorp need be shown. Sanctions under CR 11 were justified.

The court's factual findings and conclusions of law additionally support an award of attorney's fees and costs pursuant to RCW 4.84.185. The statutory requirement that the action be "frivolous and advanced without reasonable cause", *see* RCW 4.84.185, is easily met here.

### ATTORNEY'S FEES ON APPEAL

 Pursuant to RAP 18.1 and RAP 18.9(a), Pailthorp requests an award of attorney's fees on appeal. An appeal is frivolous (and a recovery of fees warranted) "if no debatable issues are presented upon which reasonable minds might differ, and it is so devoid of merit that no reasonable possibility of reversal exists.' " *In re Marriage of Greenlee*, 65 Wn. App. 703, 710, 829 P.2d 1120 (1992) (quoting *Chapman v. Perera*, 41 Wn. App. 444, 455-56, 704 P.2d 1224, *review denied*, 104 Wn.2d 1020 (1985)). In this case, Harrington persisted in his malpractice action against Pailthorp despite the lack of any facts or law to support such a claim. Harrington's appeal presents no debatable issues and is frivolous. Pailthorp is entitled to costs and attorney's fees on appeal.

---

[10]In its conclusions of law, the court stated that Harrington's claims were without merit and that he had breached the certification requirement of CR 11. The court further stated that Harrington "maintained a frivolous action against the defendant [and failed to] come forward with any showing of a factual basis to support the allegations . . .". Conclusion of law 3. Finally, the court stated that Harrington did not demonstrate "that there was any rational argument for the claims being advanced". Conclusion of law 3.

Judgment affirmed.

GROSSE, C.J., and FORREST, J., concur.

Review denied at 121 Wn.2d 1018 (1992).