# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| DIANE ARMESTO, a single woman, | ) | No. 70424-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PARRIS ANDREA ROSOLINO, fka | ) | |
| PARRIS ANDREA TILTON, fka | ) | |
| PARRIS ANDREA LORING, a single | ) | |
| woman, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 7, 2014 |
| | ) | |

VERELLEN, A.C.J. — When a trial court imposes an extreme discovery sanction such as striking defenses to a claim and imposing a default judgment, our Supreme Court strictly requires that the trial court "explicitly consider" less restrictive sanctions.[1] Here, the trial court recited that "the court considered and imposed lesser sanctions and they have not sufficed."[2] But there is no indication in the record whether the court considered lesser sanctions of limiting or precluding the testimony of the defendant rather than a default. The record also must support the trial court's finding that the sanctioned party's misconduct was willful. The record on appeal does not demonstrate whether the trial court's finding of willfulness was premised in part on Parris not paying monetary sanctions, despite her in forma pauperis status.

---

[1] Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997).

[2] Clerk's Papers at 1831.

Parris appeals from trial court orders striking her defenses to Armesto's defamation claim and entering default judgment as a discovery sanction, imposing a broad injunction, awarding Armesto attorney fees for her entire lawsuit pursuant to CR 11, and awarding damages in excess of $500,000.

We reverse the default judgment and award of CR 11 sanctions. We vacate the permanent injunction. Because guidance may be helpful on remand, we also address some questions regarding the injunction.

## FACTS

Parris was born on November 4, 1963. Her birth certificate states that she is the daughter of Leslie Bashore and Ed Loring. She was raised by Bashore, who separated from Loring.[3] When Parris was approximately three years old, Bashore married Frank Rosolino, a noted musician. Rosolino never adopted Parris. Parris lived with Bashore and Rosolino until Bashore committed suicide. Parris, then age 7, was adopted by her maternal grandparents, Clark and Darline Tilton. In the 1972 adoption proceedings, the King County Superior Court found that Loring was Parris's father, consistent with the information on her birth certificate.

In 1978, Rosolino died of an apparently self-inflicted gunshot wound. Armesto, who dated and lived with Rosolino, was a named beneficiary in Rosolino's will and executrix of his estate. Rosolino's will made bequests to Armesto and to Rosolino's sons. The will expressly disinherited others, as well as those not specifically named. Parris was not named in the will.

---

[3] Loring was deceased by the time events relevant to this appeal occurred.

Parris filed for bankruptcy in 2004. Also in 2004, Parris commissioned a DNA[4] test to determine whether she was biologically related to Rosolino. The test found to a 96 percent degree of certainty that she is not biologically related to Rosolino. A sibling DNA test from 2008 produced an "inconclusive" result.[5]

During 2005 and 2006, Parris began to research potential royalties associated with the Rosolino estate. In 2007, Parris changed her last name to Rosolino in King County District Court. Also in 2007, Parris contacted record companies claiming to be Rosolino's daughter and seeking to access funds associated with Rosolino's estate.

In conjunction with these efforts, Parris repeatedly posted extremely inflammatory material on the Internet and in other writings, claiming that Armesto killed Rosolino and committed other egregious crimes. In publishing these allegations, Parris claimed to be Rosolino's biological daughter and an heir to his estate.

Armesto initiated a lawsuit against Parris for defamation, false light, and intentional infliction of emotional distress. The complaint alleged that Parris "is not the natural born daughter of Mr. Rosolino, and he never adopted her," that Parris changed her name in 2007 "falsely claiming to have once been a Rosolino," and that Parris frequently purported to be Rosolino's "natural born daughter" and claimed rights to Rosolino's estate.[6]

Parris primarily defended the action pro se, but had counsel at times. The trial court granted her in forma pauperis status. She filed a counterclaim against Armesto, which she later dismissed.

---

[4] Deoxyribonucleic acid.

[5] Clerk's Papers at 138.

[6] Clerk's Papers at 3, 5.

During discovery, the trial court sanctioned Parris in July 2011, but that order was subsequently vacated. The trial court later intervened when Parris refused to answer questions about her biological parentage and her alleged effort to embezzle. On July 26, 2012, the court ordered Parris to supplement her discovery responses and to pay a $500 sanction. Parris refused to comply with either. The trial court imposed additional sanctions totaling $2,610 and required Parris to pay within five days. The trial court stated that it would strike Parris's defenses to the complaint if she failed to comply with its orders. Parris did not pay the sanctions or provide the discovery requested.

The trial court struck Parris's defenses to the complaint and allowed Armesto to submit proposed findings of fact and conclusions of law for entry of default judgment. The trial court accepted the findings substantially in the form presented and later entered supplemental findings and conclusions. The trial court found that Loring, not Rosolino, was Parris's biological father. The court vacated the 2007 Seattle district court order changing Parris's last name to Rosolino and permanently enjoined Parris from certain speech and conduct, including use of the name Rosolino. The court awarded Armesto $400,000 in damages for emotional distress and $100,000 in economic damages. The court also ordered Parris to pay Armesto's attorney's fees under CR 11.

Parris appeals.

## ANALYSIS

### *Discovery Sanctions*

Parris asserts that the trial court abused its discretion under CR 37 by entering a default judgment in favor of Armesto as a discovery sanction for Parris's failure to pay over $3,000 in terms and refusal to comply with discovery orders. We agree.

CR 37 provides that if a party fails to obey an order to provide or permit discovery, the court in which the action is pending may enter "such orders in regard to the failure as are just," including:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party;
>
> . . . .
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.[7]

When the trial court chooses one of the harsher remedies allowable under CR 37(b), it must be apparent from the record that the trial court explicitly (1) finds that the party willfully or deliberately violated the discovery rules and orders, (2) finds that the

---

[7] CR 37(b)(2).

5

opposing party was substantially prejudiced in its ability to prepare for trial, and

(3) considers whether lesser sanctions would have sufficed.[8] Our Supreme Court

recently held that

> [f]indings regarding the Burnet factors must be made on the record orally
> or in writing. Thus, where [a discovery sanction order] is entered without
> oral argument or a colloquy on the record, findings on the Burnet factors
> must be made in the order itself or in some contemporaneous recorded
> finding.[9]

Trial courts are afforded broad discretion in imposing sanctions, and a determination on

sanctions should not be disturbed absent a clear abuse of discretion.[10]

Here, the limited findings and record do not satisfy the requirements that the trial

court explicitly considered less restrictive sanctions and made a proper willfulness

determination. The trial court order recites that "[t]his Court has considered and

imposed lesser sanctions and they have not sufficed" and that Parris's violation was

willful.[11] The order states that Parris was previously compelled, sanctioned, or held in

contempt and that she violated the court's November 16, 2012 discovery order by failing

to respond fully to deposition questions *and* by failing to pay $500 in terms and $2,610

in attorney fees.

Of greatest concern is the trial court's conclusion that no lesser sanctions are

practical because attempts at prior sanctions failed. The record reveals that the other

sanctions the trial court attempted were narrow and few. The trial court ordered Parris

---

[8] Burnet, 131 Wn.2d at 494.

[9] Teter v. Deck, 174 Wn.2d 207, 217, 274 P.3d 336 (2012) (citation omitted).

[10] Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P .3d 115 (2006).

[11] Clerk's Papers at 1831.

to answer requests for production and pay $500 in July 2012, and on November 16, 2012, ordered her to answer and pay $500 plus $2,610 within five days or the court would strike her defenses to the complaint. Other discovery hearings are of little consequence. The July 2011 sanction was subsequently vacated. At the November 1, 2012 hearing, the court cautioned Parris to carefully consider before she refused to answer any questions about paternity or embezzlement, but did not impose or discuss any sanctions.[12]

Striking defenses and entering a default judgment is the ultimate discovery sanction against a defendant. There is no indication in the record before us that the trial court considered less severe sanctions such as limiting the scope of Parris's testimony at trial or precluding any testimony by Parris. If the court considered such alternatives and rejected them, the record should contain an indication, either in a written order or a transcription of a hearing, with an explicit explanation as to why those lesser sanctions were not suitable here.[13] The order granting default judgment does not fully set forth the basis for the trial court's determination that lesser sanctions would not have been adequate.

Regarding willfulness, it is clear that Parris intentionally refused to answer legitimate discovery questions. Parris willfully refused to answer questions about her claim that she is the natural born daughter of Rosolino and about the basis for her

---

[12] We grant Armesto's unopposed motion to supplement the record with the November 1 and November 16, 2012 hearings.

[13] See Burnet, 131 Wn.2d at 497 ("it was an abuse of discretion for the trial court to impose the severe sanction of limiting discovery and excluding expert witness testimony . . . without first having at least considered, on the record, a less severe sanction that could have advanced the purposes of discovery") (emphasis added).

related claim that she is an heir entitled to royalties. Parris's objections to both requests for production and her objections during her deposition establish no valid justification for failing to answer those questions. But it is unclear from the record whether the court based its willfulness finding, in part, upon Parris's failure to pay the sanctions when Parris may have merely lacked the ability to pay them.

The trial court's January 17, 2013 order identifies Parris's failure to pay the $500 sanctions imposed on July 26, 2012 and the $2,610 imposed on November 16, 2012 as part of the basis for imposition of default as a discovery sanction. A person's financial inability to comply with a monetary penalty imposed by a court does not support a finding that the party willfully failed to comply.[14] Accordingly, when a court has recognized a party's in forma pauperis status, the record must be sufficiently developed to allow the determination whether the party's inability to pay sanctions lacks a valid excuse or justification (such as a showing that the party no longer has in forma pauperis status). Absent a factual basis in the record demonstrating that Parris willfully failed to pay monetary sanctions, we cannot conclude that the trial court's finding of willfulness was based on a sound exercise of its discretion.

It is not clear whether the trial court "explicitly considered" whether lesser sanctions would have been ineffective and whether the trial court's willfulness finding is based upon Parris's inability to pay. Under the circumstances of this case, the record does not reveal whether the trial court properly exercised its discretion in imposing the extreme discovery sanction of default. We reverse the default judgment.

---

[14] See Thomas v. Gerber Productions, 703 F.2d 353 (9th Cir. 1983) (abuse of discretion to impose $750 discovery sanction when court knows unable to pay the sanction).

8

*CR 11*

Parris challenges the trial court's award to Armesto of $162,117.20 in attorney fees as a CR 11 sanction against Parris. This award encompassed the entire cost of Armesto's lawsuit, including prosecuting her own claim and defending against Parris's counterclaim.

An award of attorney fees under CR 11 is limited to amounts "'reasonably expended in responding to [specified] sanctionable filings,'" and appellate courts will remand unless the trial court articulates clear grounds for any award of CR 11 sanctions and limits its award accordingly.[15] We review a trial court's award of attorney fees under CR 11 for an abuse of discretion.[16]

The trial court erred by imposing CR 11 sanctions encompassing the entirety of Armesto's attorney fees without any segregation and without a demonstration that the fees were incurred due to specific "sanctionable filings." Here, the trial court made no findings that specific filings by Parris were deficient. Both the lack of segregation and the failure to tie the amounts to specific sanctionable filings compel reversal of the CR 11 award to Armesto.

*Injunction*

Parris also challenges the injunctive relief granted. Because we reverse the default judgment, the permanent injunction is necessarily vacated. Because the trial court may ultimately confront a renewed request for an injunction and some guidance

---

[15] Just Dirt, Inc. v. Knight Excavating, Inc., 138 Wn. App. 409, 418, 157 P.3d 431 (2007) (quoting Biggs v. Vail, 124 Wn.2d 193, 201, 876 P.2d 448 (1994)).

[16] Harrington v. Pailthorp, 67 Wn. App. 901, 910, 841 P.2d 1258 (1992).

may be helpful on remand, we address some troublesome aspects of the injunctive relief granted.

Following entry of default, the trial court entered a permanent injunction. Parris attacks portions of the injunction on the grounds of unconstitutional prior restraint on speech, vagueness, and overbreadth. Specifically, Parris asserts that (1) the restriction on any Internet postings about Armesto is an unconstitutional prior restraint on speech, (2) the restriction on "implied" defamatory communications is unconstitutionally vague, and (3) the provisions of the injunction relating to Parris's name change exceed the trial court's authority.

Freedom of speech is not an absolute right, and the State may punish its abuse.[17] "It is important to safeguard First Amendment rights; it is also important to give protection to a person who is intentionally and maliciously defamed, and to discourage that kind of defamation in the future."[18] Washington trial courts have the authority to enjoin dissemination of abusive speech, which includes defamation and harassment.[19] A trial court's decision to grant an injunction and its decision regarding the terms of the injunction are reviewed for abuse of discretion.[20]

---

[17] Bering v. SHARE, 106 Wn.2d 212, 226, 721 P.2d 918 (1986).

[18] Maheu v. Hughes Tool Co., 569 F.2d 459, 479-80 (9th Cir. 1977).

[19] Bering, 106 Wn.2d at 244; Rhinehart v. Seattle Times Co., 98 Wn.2d 226, 237, 654 P.2d 673 (1982), affirmed, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984); In re Marriage of Meredith, 148 Wn. App. 887, 902, 201 P.3d 1056 (2009) (remanding to family court to craft a protective order to prevent further harassing and libelous communications); cf. Maheu, 569 F.2d 459, 480 (holding that "the state's interest in deterring malicious defamation, for the purpose of protecting privacy and reputation, even when public figures are involved, is compelling").

[20] State v. Kaiser, 161 Wn. App. 705, 726, 254 P.3d 850 (2011).

Prior restraints on speech before publication are disfavored because such restraints burden the exercise of the right to speak before any abuse of the right is shown.[21] Post-publication restrictions, on the other hand, "simply prohibit further exercise of the right after a showing of abuse."[22] Subsequent punishment of abusive speech, including an injunction of repetitive defamation, is not a prior restraint.[23]

Parris argues that the provision enjoining her from "expressly or impliedly posting on the Internet about Armesto" encompasses her ability to speak truthfully about Armesto and thus is not specifically crafted to prohibit only unprotected speech. Such broad prohibitions can be "unconstitutional prior restraint[s]."[24]

Parris also argues that certain terms of the injunction are "hopelessly vague," such as the prohibition against posting "'any content on the Internet that expresses or implies that [she] is the natural, biological or adopted daughter of Frank Rosolino.'"[25] When "'ordinary people [can't] understand what conduct is prohibited,' a prohibition is void for vagueness."[26] Post-publication restraints on defamation can extend to implied comments. Our Supreme Court has long recognized that speech may be defamatory by implication.[27] Moreover, restrictions against implying a biological or adoptive

---

[21] Seattle v. Bittner, 81 Wn.2d 747, 756, 505 P.2d 126 (1973).

[22] Bering, 106 Wn.2d at 243.

[23] See id. at 235 (emphasizing "important distinction between prior restraint and subsequent punishment"); Bradburn v. N. Cent. Reg'l Library Dist., 168 Wn.2d 789, 802, 231 P.3d 166 (2010) ("A prior restraint seeks to prohibit future speech rather than to punish speech that has occurred.").

[24] Meredith, 148 Wn. App. at 898.

[25] Brief of Appellant at 10 (quoting Clerk's Papers at 2170).

[26] Id. (alteration in original) (quoting O'Day v. King County, 109 Wn.2d 796, 811, 749 P.2d 142 (1988)).

[27] See Mohr v. Grant, 153 Wn.2d 812, 823-26, 108 P.3d 768 (2005).

relationship to an individual may, in some circumstances address specific tortious speech. Here, however, the court itself recognizes Parris's arguable status as Rosolino's step-daughter. If Armesto prevails on remand, any restriction should be properly tailored. For example, a photo of Parris as a child with Rosolino, without additional comment, would not be troublesome. A reference to Rosolino as her step-father, alone, would not be troublesome. References to herself as the natural born, biological, or adoptive daughter or heir of Rosolino would be troublesome.

The trial court's purported vacation of the district court order changing Parris's last name to Rosolino also raises significant procedural concerns. Generally, superior courts and district courts have authority to change an individual's name,[28] and a "trial court is vested with a broad discretionary power to shape and fashion injunctive relief to fit particular facts, circumstances, and equities of the case before it."[29] However, in awarding remedies for a default judgment, the trial court may not order relief in excess of or substantially different from that described in the complaint.[30] Armesto never requested that the trial court invalidate Parris's name change. The trial court, sua sponte, proposed this remedy. It is also a concern when a superior court purports to

---

[28] 15A KARL B. TEGLAND & DOUGLAS J. ENDE, WASHINGTON PRACTICE: WASHINGTON HANDBOOK ON CIVIL PROCEDURE § 9.4, at 179 (2013-2014 ed.) (both superior courts and district courts have jurisdiction over name changes); Moore v. Perrot, 2 Wash. 1, 4, 25 P. 906 (1891) (superior courts have "universal original jurisdiction.").

[29] Rupert v. Gunter, 31 Wn. App. 27, 30, 640 P.2d 36 (1982).

[30] In re Marriage of Leslie, 112 Wn.2d 612, 617, 772 P.2d 1013 (1989). Generally, "'[o]ne has a right to assume that the relief granted on default will not exceed or substantially differ from that described in the complaint and may safely allow a default to be taken in reliance upon this assumption.'" Columbia Valley Credit Exch., Inc. v. Lampson, 12 Wn. App. 952, 954-55, 533 P.2d 152 (1975) (alteration in original) (quoting Sceva Steel Bldgs., Inc. v. Weitz, 66 Wn.2d 260, 262, 401 P.2d 980 (1969)).

vacate a district court order outside of the parameters of a RALJ appeal or a writ proceeding.

*Attorney Fees on Appeal*

Because Parris's appeal is meritorious, we deny Armesto's requests attorney fees on appeal under RAP 18.9(a).[31]

We reverse the default judgment and CR 11 sanction award, vacate the permanent injunction,[32] and remand for further proceedings consistent with this opinion.

WE CONCUR:

---

[31] Halvorsen v. Ferguson, 46 Wn. App. 708, 723, 735 P.2d 675 (1986).

[32] Of course, Armesto may seek a temporary injunction pending the outcome of the litigation.