104 P.3d 25 (2005)
Nancy CHRISP, Appellant,
v.
Claud GOLL, a single person, Claudette Ritter, a single person, Dee Myers and John Doe Myers, and their marital community, and Veterans Mortgage, Inc., a Washington corporation, Respondents.
No. 53407-6-I.
Court of Appeals of Washington, Division 1.
January 3, 2005.
*26 Matthew F. Davis, Lars E. Neste, Demco Law Firm, PS, Seattle, WA, for Appellant.
David Hadley Middleton, Federal Way, WA, for Respondents.
ELLINGTON, A.C.J.
This case requires us to determine whether the substantial compliance doctrine applies to the earnest money forfeiture statute, which provides that a seller of residential property retains all rights and remedies upon the buyer's default and is not limited to forfeiture of earnest money unless the contract so specifies in the way mandated by the statute. We hold the substantial compliance doctrine does not apply to this statute, and remand for trial.

BACKGROUND
The earnest money forfeiture statute is found in RCW 64.04.005. It provides that a seller of residential real estate has all common law remedies upon a buyer's unexcused failure to purchase, unless the contract states otherwise in specified language and typeface, and the limiting paragraph itself is initialed by both parties.
Nancy Chrisp put her Auburn home up for sale for $450,000. The property included a small guest cottage. On July 2, 2001, Claud Goll made a full-price offer.[1] He planned to live in the cottage, and his daughter and grandchild would occupy the main house. This required installing a kitchen in the cottage, which Goll planned to do.
Goll presented his offer on a lengthy purchase and sale agreement form, preprinted in small type. He proposed an expedited schedule, with closing in 10 days and possession three days later. Goll offered $2,000 in earnest money, which was acceptable to Chrisp only because Goll was prequalified and preapproved for financing.
The agreement addressed the consequences of the buyer's default in two provisions. On the first page, Item 7 allowed the parties to indicate whether "forfeiture of earnest money" or "seller's election of remedies" would apply in the case of the buyer's default. Goll's realtor checked the box corresponding to the forfeiture option. Paragraph P on the fourth page elaborated on Item 7:
Default. In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the following provision, as identified in Specific Term No. 7, shall apply:
i. Forfeiture of Earnest Money. That portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available for such failure.
ii. Seller's Election of Remedies. Seller may, at Seller's option (a) keep the Earnest Money as liquidated damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against the Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity.
Clerk's Papers at 9. Chrisp and Goll signed the agreement, and each initialed the bottom of every page. Neither separately signed or initialed[2] the remedy provisions on the first *27 and fourth pages, as required by RCW 64.04.005. The parties did not utilize Form 22D, which outlines optional clauses including one making earnest money forfeiture the seller's sole remedy, and providing spaces for buyer and seller to initial.
To accommodate Goll's schedule, Chrisp testified she removed her furniture from the main house and put it in storage; allowed Goll's daughter to park a moving truck on the property and put the utilities and security system accounts into her name; moved, with her granddaughter, into the cottage; and rushed into the purchase of another home.
One day before he was to take possession, on July 14, 2001, Goll backed out. Ostensibly, this was because he failed to obtain financing, a condition of the contract. But Goll's daughter testified that Goll actually decided not to buy the property because he realized he could not legally install a kitchen in the cottage.
After Goll's default, the September 11 attacks and economic recession affected the housing market. Without furniture, the house did not show well. Chrisp was unable to sell for six months. Ultimately she sold for $375,000, $75,000 less than Goll's offer, and $75,000 less than Chrisp paid several years earlier.
Chrisp sued Goll for specific performance or damages. Goll defended on several grounds, and contended that Chrisp was limited to forfeiture in any event: "[P]laintiff's relief is limited to the liquidated damages set forth in the alleged contract." Clerk's Papers at 26.
At trial, Chrisp and her realtor, Glenda Naglich, testified they knew Goll's realtor had checked the forfeiture remedy box on the purchase and sale agreement. Naglich believed the forfeiture paragraph was ineffective without the initials of both seller and buyer. She advised Chrisp not to initial the paragraph because, given Goll's accelerated closing and occupancy requirements and small earnest money deposit, it was important to protect Chrisp's remedies. Chrisp testified she did believe she was not giving up any rights or remedies by signing the contract.
At the close of Chrisp's case, Goll moved for judgment as a matter of law on several grounds, including substantial compliance with the earnest money forfeiture statute. The court initially denied the motion without prejudice, but later revisited the issue, and granted the motion. The court concluded the only purpose of RCW 64.04.005 was to give the parties notice of the forfeiture clause. Since both parties were aware of the provision, the court ruled they had substantially complied with the requirements of the statute. The court thus held Chrisp's damages were limited to the amount of the earnest money. Goll then stipulated to forfeiture of the earnest money, and the court dismissed the jury. Chrisp appeals.

DISCUSSION
Judgment as a matter of law is appropriate "`when, viewing the evidence in the light most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party.'" Davis v. Microsoft Corp., 149 Wash.2d 521, 531, 70 P.3d 126 (2003) (quoting Sing v. John L. Scott, Inc., 134 Wash.2d 24, 29, 948 P.2d 816 (1997)). We review a grant of judgment as a matter of law de novo. Id. at 530-31, 70 P.3d 126. Whether a statute is susceptible to substantial compliance is a question of law, which we also review de novo. Williamson, Inc. v. Calibre Homes, Inc., 147 Wash.2d 394, 398, 54 P.3d 1186 (2002).
RCW 64.04.005 is unambiguous. It states that certain requirements must be met before a contractual clause limiting a seller's remedies will be effective, and clearly specifies the consequences of noncompliance:
(1)(a) A provision in a written agreement for the purchase and sale of real estate which provides for the forfeiture of an earnest money deposit to the seller as the seller's sole and exclusive remedy if the purchaser fails, without legal excuse, to *28 complete the purchase, is valid and enforceable, regardless of whether the seller incurs any actual damages, PROVIDED That:
(i) The total earnest money deposit to be forfeited does not exceed five percent of the purchase price; and
(ii) The agreement includes an express provision in substantially the following form: "In the event the purchaser fails, without legal excuse, to complete the purchase of the property, the earnest money deposit made by the purchaser shall be forfeited to the seller as the sole and exclusive remedy available to the seller for such failure."
(b) If the real estate which is the subject of the agreement is being purchased by the purchaser primarily for the purchaser's personal, family, or household purposes, then the agreement provision required by (a)(ii) of this subsection must be:
(i) In typeface no smaller than other text provisions of the agreement; and
(ii) Must be separately initialed or signed by the purchaser and seller.
(2) If an agreement for the purchase and sale of real estate does not satisfy the requirements of subsection (1) of this section, then the seller shall have all rights and remedies otherwise available at law or in equity as a result of the failure of the purchaser, without legal excuse, to complete the purchase.
We do not see how a plain reading of this statute allows application of the substantial compliance doctrine. The statute itself clearly states the consequences of failure to comply: the seller retains all remedies. Excusing a party's failure to meet the requirements of subsection (1) would render meaningless the clear language of subsection (2).
Nevertheless, Goll contends this is one of those "times when even the literal expression of legislation may be inconsistent with the general objectives or policy behind it." Murphy v. Campbell Investment Co., 79 Wash.2d 417, 420, 486 P.2d 1080 (1971) (quoting J. Sutherland, Statutes and Statutory Construction § 6006 (Horack 3d ed.1943)). In such circumstances the substantial compliance doctrine allows courts to "give legislative commands a rational interpretation founded upon their design." Williamson, Inc., 147 Wash.2d at 401, 54 P.3d 1186. Goll argues that the sole objective of RCW 64.04.005 is to ensure that both parties are aware of the contract term limiting the seller's remedies, and that where actual notice exists, absence of initials is merely a "technical defect." Resp. Br at 11.
Certainly one purpose of the statute is notice, and the provisions of subsection (1), requiring the clause to be printed in standard language and font size and initialed by the parties, tends to ensure notice. But we do not agree this is the only purpose of the statute. Subsection (2) does nothing to further the notice objective. Rather, it sets forth the consequences of failure to comply with subsection (1), and serves to eliminate exactly the sort of controversy presented here.
To substantially comply with a statute, there must be "actual compliance in respect to the substance essential to every reasonable objective of the statute."[3] In cases where substantial compliance has been found, "there has been actual compliance with the statute, albeit procedurally faulty."[4] For example, our courts have found substantial compliance where a contractor failed to provide proof of insurance with his registration application as required by statute, but did in fact carry the required insurance;[5] where a party delivers a petition or notice of appeal to the wrong person, but the party who was statutorily required to receive the document was certain to do so;[6] and where a *29 petition for involuntary civil commitment was signed by only one doctor instead of the statutorily required two, but a second doctor provided a signed affidavit as a substitute for her signature.[7] In contrast, our courts have refused to apply the doctrine to statutory time limits, because "[i]t is impossible to substantially comply with a statutory time limit.... It is either complied with or it is not."[8]
Here, not only did the parties fail to comply with the statute, but Chrisp and her realtor testified she intentionally avoided compliance. She had no wish to be bound by the forfeiture clause, and ensured she would not be bound by declining to meet the statutory conditions for the clause to be effective. This is entirely different from situations in which parties attempt to comply with statutory requirements but do so imperfectly. "Noncompliance with the statute is not substantial compliance." Corona v. Boeing Co., 111 Wash.App. 1, 8, 46 P.3d 253 (2002) (citing Crosby v. Spokane County, 137 Wash.2d 296, 302, 971 P.2d 32 (1999)). Chrisp took advantage of the protection the statute affords to sellers, and she was entitled to do so.
We hold that the plain language of RCW 64.04.005 does not allow substantial compliance, and that, in any event, the circumstances here do not establish substantial compliance with the objective of the statute.
Reversed and remanded for trial.
WE CONCUR: BECKER and BAKER, JJ.
NOTES
[1] Goll initially offered $445,000, but Chrisp rejected this offer.
[2] Goll contends Chrisp did initial the section on the first page. She testified her initials applied to a handwritten entry immediately below. Goll's initials are absent.
[3] Application of Santore, 28 Wash.App. 319, 327, 623 P.2d 702 (1981).
[4] City of Seattle v. Public Employment Relations Comm. (PERC), 116 Wash.2d 923, 928, 809 P.2d 1377 (1991).
[5] Murphy, 79 Wash.2d at 419, 486 P.2d 1080.
[6] See, e.g., Black v. Dep't of Labor & Indus., 131 Wash.2d 547, 555, 933 P.2d 1025 (1997) (claimant's service of notice of appeal on assistant attorney general assigned to represent Department in his case substantially complied with requirement that service be made on Department through its director); Matter of Saltis, 94 Wash.2d 889, 895-96, 621 P.2d 716 (1980) (petition delivered to Department of Labor and Industries rather than to the "director" of the Department as required by statute); Vasquez v. Dep't of Labor & Indus., 44 Wash.App. 379, 384, 722 P.2d 854 (1986) (petition served upon an attorney instead of the "party").
[7] In re Detention of A.S., 138 Wash.2d 898, 901, 982 P.2d 1156 (1999).
[8] PERC, 116 Wash.2d at 928-29, 809 P.2d 1377; accord Corona v. Boeing Co., 111 Wash.App. 1, 8-9, 46 P.3d 253 (2002); San Juan Fidalgo Holding Co. v. Skagit County, 87 Wash.App. 703, 711-12, 943 P.2d 341 (1997); Petta v. Dep't of Labor & Indus., 68 Wash.App. 406, 409-10, 842 P.2d 1006 (1992). See also Nevers v. Fireside, Inc., 133 Wash.2d 804, 810-12, 947 P.2d 721 (1997) (no substantial compliance where parties to mandatory arbitration failed to serve copies of request for trial de novo within 20 days of filing of arbitration award and failed to file proof of service within that time period as required by MAR 7.1(a)).