FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 APR -8 AM 9: 55

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TAMMY BECK, as personal representative of the Estate of of Claud Goll, | ) ) ) ) | No. 67641-5-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | |
| v. | ) ) ) | |
| DARREN E. GRAFE and JANE DOE GRAFE, and the marital community composed thereof, | ) ) ) | UNPUBLISHED OPINION |
| | ) | FILED: April 8, 2013 |
| Respondents. | ) ) | |

BECKER, J. — In this legal malpractice case that was dismissed on summary judgment, Claud Goll's estate sued Darren Grafe, the attorney who defended Goll in a breach of contract case. By the time Goll lost the appeal that ended the suit, the statute of limitations had run on his claims against the realtors who could have been named as third party defendants. The primary issue now is whether Grafe is entitled to avoid liability because he turned the case over to a successor attorney before the statute of limitations expired. We reverse the dismissal because there are genuine issues of material fact precluding us from holding as a matter of law that the successor attorney was a superseding cause that absolves Grafe of any liability.

We review an order of summary judgment de novo, engaging in the same inquiry as the trial court. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is proper if, viewing the facts and reasonable inferences most favorably to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c); Versuslaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 319-20, 111 P.3d 866 (2005), review denied, 156 Wn.2d 1008 (2006).

This action arose out of a real estate contract dispute that was resolved against Goll on appeal in Chrisp v. Goll, 126 Wn. App. 18, 104 P.3d 25 (2005), review denied, 156 Wn.2d 1004 (2006). On July 2, 2001, Goll agreed to purchase Nancy Chrisp's home. A feature of the home that Goll found attractive was a separate guest cottage. Goll withdrew from the purchase and sale agreement when he discovered the separate structure did not meet code for a guest house. Chrisp sued Goll for defaulting on the contract. Attorney Darren Grafe, then an associate at David H. Middleton & Associates, undertook to represent Goll in this suit.

Chrisp claimed damages of over $100,000. Due in part to a drop in market prices, the price Chrisp received when she eventually found another buyer was substantially less than what Goll had agreed to pay. Goll took the position that his damages were limited to his earnest money deposit of $2,000.

A statute in effect at the time the parties entered into their contract provided that a seller of residential property retained all rights and remedies upon

the buyer's default and was not limited to forfeiture of earnest money unless the contract so specified in the way mandated by the statute. Former RCW 64.04.005 (1991); Chrisp, 126 Wn. App. at 19. The form of agreement Chrisp and Goll used addressed the statute's specific requirements by allowing the parties to indicate, by checking boxes, whether "forfeiture of earnest money" or "seller's election of remedies" would apply if the buyer defaulted. Chrisp, 126 Wn. App. at 20. The statute stated that the forfeiture remedy provision would be effective only if both the purchaser and the seller initialed or signed it; if not, the seller was to "have all rights and remedies otherwise available at law or in equity." Former RCW 64.04.005(1)(b)(ii), (2) (1991); Chrisp, 126 Wn. App. at 23. Chrisp, on advice of her agent, did not initial or sign or otherwise indicate her approval of the forfeiture remedy provision.

The case went to trial in August 2003. A few months before trial, Grafe informed Goll he was leaving the Middleton firm. David Middleton assumed representation of Goll.

At trial, the court ruled that the parties had substantially complied with the statutory requirements for electing forfeiture of earnest money as a remedy. The court ruled that Chrisp's damages were limited to Goll's earnest money deposit of $2,000. Goll then stipulated to forfeiture of the earnest money, and the court dismissed the jury and awarded attorney fees to Goll.

Chrisp appealed. This court reversed in an opinion issued in January 2005. We held that the trial court erred by applying the substantial compliance doctrine. Chrisp, 126 Wn. App. at 23.

Goll settled with Chrisp before he died in June 2009.

On August 6, 2010, Goll's daughter Tammy Beck filed this malpractice suit against Grafe on behalf of Goll's estate. The estate alleges that Grafe mishandled the defense of Chrisp's suit by failing to preserve Goll's claims against the realtors involved in the transaction between Goll and Chrisp. The trial court granted Grafe's motion for summary judgment. The estate appeals.

To establish a case of legal malpractice, the estate must prove (1) the existence of an attorney-client relationship which gives rise to a duty of care, (2) an act or omission by Grafe that breaches his duty of care, (3) damage to Goll, and (4) proximate causation between Grafe's breach of duty and the damages incurred. Hizey v. Carpenter, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). To avoid dismissal, Beck must show an issue of material fact as to each element. Craig v. Wash. Trust Bank, 94 Wn. App. 820, 824, 976 P.2d 126 (1999).

ATTORNEY–CLIENT RELATIONSHIP

Grafe first contends that the estate cannot meet the threshold element of an attorney-client relationship.

This element is met. It is undisputed that Goll and Grafe had an attorney-client relationship from 2001 until June 2003, when Grafe filed a notice of withdrawal and attorney Middleton took over Goll's case. Grafe is arguing that

Goll's damages from legal malpractice, if any, were incurred after Grafe withdrew. This argument is more properly addressed in connection with the element of causation.

## BREACH OF DUTY

The estate alleges that Grafe was negligent in failing to bring a third party negligence suit against Prudential Northwest Realty before the statute of limitations expired. Prudential's agent assisted Goll in the ill-fated transaction with Chrisp in July 2001. Prudential failed to inform Goll that without Chrisp's initials accepting earnest money forfeiture as the remedy for a buyer's default, Goll would not be able to limit his damages in case of default.

An attorney must exercise "the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law" in Washington. Hizey, 119 Wn.2d at 261. To establish breach of duty, it is often necessary to provide expert testimony stating what the standard of care is and how the standard was allegedly breached. Geer v. Tonnon, 137 Wn. App. 838, 851, 155 P.3d 163 (2007), review denied, 162 Wn.2d 1018 (2008). The estate submitted a declaration from attorney Randolph I. Gordon that was considered by the trial court in connection with Grafe's motion for summary judgment.[1]

---

[1] Clerk's Papers at 219-47.

Gordon reviewed the relevant facts of the underlying litigation and provided his expert opinion that Grafe breached the standard of care by negligently failing to sue Prudential, by failing to ascertain the date when the statute of limitations would expire on such a suit, and by failing to ensure that Goll knew he had to sue Prudential before that date.

According to Gordon, the suit against Prudential would be an "ABC" claim as exemplified by Manning v. Loidhamer, 13 Wn. App. 766, 538 P.2d 136, review denied, 86 Wn.2d 1001 (1975). "When the natural and proximate consequences of a wrongful act of defendant involve plaintiff in litigation with others, there may as a general rule be a recovery of damages for reasonable expenses incurred in the litigation, including attorney's fees." Manning, 13 Wn. App. at 769. While attorney fees ordinarily are not damages in a tort suit, they are damages under the litigation theory discussed in Manning. Thus, if the negligence of Prudential ("A") caused Goll ("B") to become involved in litigation with Chrisp ("C") and as a result to have to pay attorney fees to Grafe, the attorney fees would be damages for which Prudential would be liable to Goll.

Under this legal theory, Prudential's conduct began to cause damages to Goll in 2001, as soon as he incurred attorney fees to defend against Chrisp's lawsuit. Gordon testified that the three-year statute of limitation on the claim against Prudential would have expired between July and October 2004, with the exact date being a fact question dependent upon when Goll first incurred such fees.

The facts of the underlying litigation, seen in the light most favorable to the estate, support Gordon's opinion that Grafe did not act as a reasonably prudent lawyer. Grafe failed to realize that the element of damages, a necessary prerequisite to a negligence suit, is satisfied in an ABC scenario by the payment of attorney fees. He persisted in the erroneous view that Goll would not incur damages that Prudential could be liable for unless a court ordered him to pay Chrisp more than the earnest money. This view led him to the erroneous conclusion that the statute of limitations on Goll's claim against Prudential would not begin to run unless and until Chrisp prevailed with finality on her underlying lawsuit against Goll.

Beck declares that she and Goll raised the topic of suing the realtors at every meeting and conversation they had with Grafe. "Each time it came up, Mr. Grafe told my father and I that suit could not be filed against the real estate brokerage firms until my father had been harmed and could show damages." She says Grafe "made it clear that the statute of limitations would not start until the current lawsuit was finished because that was the time in which we would know that my father had, in fact, suffered damages as a result of their role in the transaction." At one point, Beck pointed out that her father had already spent $15,000 in attorney fees as evidence of damages. Grafe responded that he thought a motion to dismiss would resolve the case and allow Goll to recover his attorney fees.

7

In responding to the allegation that he breached his duty of care by failing to timely sue Prudential, Grafe does not dispute the estate's claim that an ABC suit against Prudential would have been the vehicle for recovering Goll's attorney fees if timely brought. Rather, Grafe claims that he made a reasonable decision that the best strategy for protecting Goll was to defeat Chrisp's lawsuit by arguing substantial compliance with the statute on seller's remedies. Grafe claims this strategy was reasonable, even though in hindsight it was unsuccessful, because the statute was relatively new and there was no authority to the contrary. He relies on the rule that mere errors in judgment or in trial tactics do not subject an attorney to liability for legal malpractice, particularly "when the error involves an uncertain, unsettled, or debatable proposition of law." Halvorsen v. Ferguson, 46 Wn. App. 708, 717, 735 P.2d 675 (1986), review denied, 108 Wn.2d 1008 (1987).

Grafe does not identify any evidence in the record supporting his claim that he made a deliberate tactical choice to pursue one strategy over the other. And in any event, this is not a case involving an uncertain, unsettled, or debatable proposition. As we held in Chrisp, the statute in question is unambiguous:

> We do not see how a plain reading of this statute allows applications of the substantial compliance doctrine. The statute itself clearly states the consequences of failure to comply: the seller retains all remedies. Excusing a party's failure to meet the requirements of subsection (1) would render meaningless the clear language of subsection (2).

8

Chrisp, 126 Wn. App. at 23. A reasonably prudent attorney recognizes that a statute itself is authority. The absence of an appellate opinion construing the statute does not mean the law is unsettled. Under these circumstances, Grafe cannot be excused from liability on the basis that he made a reasonable strategic decision in an uncertain area of the law.

This is not to say that pursuing the theory of substantial compliance was malpractice in itself. If Grafe breached the standard of care, it was by failing to recognize the prudence of suing Prudential as a backup plan to protect Goll in case the substantial compliance strategy ultimately failed.

Grafe contends that it would have "necessarily undermined" the defense of substantial compliance in the Chrisp lawsuit if, at the same time, he had pursued a negligence claim against Prudential. Grafe deposed the Prudential agents as witnesses to support the position that Goll could not be held liable beyond the $2,000 in earnest money, and he implies that he did not want to alienate these witnesses by suing Prudential. This is not an argument that can sustain dismissal on summary judgment. Whether Chrisp could hold Goll liable for more than the earnest money was going to turn on an interpretation of the statute, not on the testimony of witnesses. And even if Grafe reasonably thought the Prudential employees would be helpful witnesses, he does not explain why their testimony would necessarily have been less available if he had made Prudential a third party defendant in the suit.

9

According to Grafe, Goll always knew Grafe had made a decision not to sue Prudential while the litigation against Chrisp was still going on. Grafe also points out that he wrote Goll a letter in November 2001 explaining that if Goll were to bring a claim against Prudential in the future, it would have to be within the statute of limitations. But Grafe does not show how Goll's knowledge of these facts would prevent a jury from finding that Grafe breached his duty. Grafe's alleged breach of duty consists of his failing to recognize that the statute of limitations on a suit against Prudential was already running, failing to identify the date when it would expire, and failing to inform Goll of these facts. A client depends on the lawyer to provide that type of information.

A jury could find, based on Gordon's expert testimony, that Grafe breached the standard of care of a reasonable attorney.

## PROXIMATE CAUSE

The estate claims that Grafe's negligence caused damages to Goll consisting of Goll's attorney fees and costs in the Chrisp lawsuit, the money he paid to settle with Chrisp, and any lost proceeds from a lawsuit against Prudential. Grafe maintains that even if a jury could find that he handled Goll's case negligently, there could be no finding of proximate cause because when he turned the case over to Middleton shortly before trial in 2003, there was at least a year to go before the statute of limitations would expire on Goll's claim against Prudential.

To establish proximate cause, the estate must demonstrate that "but for" Grafe's alleged negligence, Goll would have obtained a better result in the Chrisp lawsuit. Smith v. Preston Gates Ellis, LLP, 135 Wn. App. 859, 864, 147 P.3d 600 (2006), review denied, 161 Wn.2d 1011 (2007). The trial court can decide proximate cause as a matter of law if reasonable minds could not differ, but proximate cause is usually a question for the jury. Smith, 135 Wn. App. at 864. The jury acts as the second trier of fact. Daugert v. Pappas, 104 Wn.2d 254, 257-58, 704 P.2d 600 (1985), citing Cline v. Watkins, 66 Cal. App. 3d 174, 179, 135 Cal. Rptr. 838 (1977). As such, a jury in this malpractice case would have to decide what a reasonable jury would have done, but for Grafe's negligence, in a timely claim by Goll against Prudential.

Grafe contends that the chain of causation between his alleged negligence and Goll's damages was broken when Middleton took over the case in 2003. Grafe characterizes Middleton as an independent intervening cause, citing Maltman v. Sauer, 84 Wn.2d 975, 982, 530 P.2d 254 (1975). Under Maltman, proximate cause is not proved if the injury is the result of an intervening cause which came into active operation after the negligence of the defendant ceased. If the intervening act is not foreseeable, it will break the causal connection between the defendant's negligence and the plaintiff's injury. Maltman, 84 Wn.2d at 982. Grafe cites a case that translates this rule of causation into the following general statement applicable to legal malpractice cases: "A withdrawn attorney is absolved of continuing liability where there

remains time for successor counsel to remedy his negligence." Diamond v. Sokol, 468 F. Supp. 2d 626, 642 (S.D.N.Y. 2006). Grafe contends he must be absolved of liability because there was enough time for Middleton to remedy Grafe's alleged negligence after Grafe withdrew.

According to Gordon's expert testimony on behalf of the estate, Grafe was negligent in failing to add Prudential to the Chrisp lawsuit as a third party defendant and Middleton did not have time to cure that negligence because he inherited the case from Grafe two and a half months before trial when the "architecture of the case" had already been established. A joint pretrial order had already been entered, stating that all essential parties had been named. In Gordon's opinion, a trial judge would have been unlikely to grant Middleton's motion to amend to bring in a new party with so little time remaining before trial.

Grafe attacks Gordon's expert opinion as irrelevant and admissible. He contends that whether the trial judge would have allowed an amendment to bring in Prudential is a question of law for the court. It is true that under some circumstances, the proximate cause determination in a malpractice case is a question of law for the court. See, e.g., Nielson v. Eisenhower & Carlson, 100 Wn. App. 584, 594, 999 P.2d 42, review denied, 141 Wn.2d 1016 (2000). In this case, however, whether Middleton could have successfully moved to amend to bring in Prudential is properly treated as a question of fact. See Diamond, 468 F. Supp. 2d at 642-43. The disposition of motions to amend the pleadings is discretionary with the trial court, and its refusal to permit such an amendment will

not be overturned except for a manifest abuse of discretion. Lincoln v. Transamerica Inv. Corp., 89 Wn.2d 571, 577, 573 P.2d 1316 (1978). As in Diamond, it remains an issue for trial whether the factors courts typically consider in deciding a motion to amend would have played out in favor of imposing liability on Grafe as well as on Middleton. Gordon's expert opinion on this issue is relevant and admissible. A jury could find that by the time Middleton took over, it was already too late to bring Prudential in by amendment.

But, Grafe argues, even if he did not leave Middleton enough time to move to amend to bring in Prudential as a third party defendant in the Chrisp lawsuit, Middleton still had enough time to bring a separate lawsuit against Prudential. The trial of the Chrisp lawsuit ended in August 2003. The estate asserts that the statute of limitations on such a claim expired as early as July 2004. Grafe argues that because Middleton had approximately a year to bring a separate suit, Middleton's negligence in failing to cure Grafe's negligence was, as a matter of law, an independent intervening cause. For this proposition, he relies not only on Diamond but also on a trio of Illinois cases, Land v. Greenwood, 133 Ill. App. 3d 537, 478 N.E.2d 1203 (Ill. App. Ct. 1985); Mitchell v. Schain, Fursel & Burney, Ltd., 332 Ill. App. 3d 618, 773 N.E.2d 1192 (Ill. App. Ct. 2002); and Cedeno v. Gumbiner, 347 Ill. App. 3d 169, 806 N.E.2d 1188, 1192 (Ill. App. Ct. 2004). In Land, the court states that the "successor counsel had the duty to preserve his client's cause of action. It was viable when he received it; it was not when he got through with it." Land, 478 N.E.2d at 1205. Following Land, Mitchell holds that

13

the first attorney is excused from liability unless there is a factual issue "whether a viable cause of action still remained after the first attorney was discharged." Mitchell, 773 N.E.2d at 1196. Cedeno summarizes Land and Mitchell by stating, "If the underlying cause remained actionable upon the discharge of the former attorney, plaintiff can prove no set of facts which connect defendant's conduct with any damage plaintiff sustained." Cedeno, 806 N.E.2d at 1192.

Neither Grafe nor the estate has briefed the issue whether a separate suit by Goll against Prudential was still viable when Middleton took over the case. We will assume for purposes of analysis that a separate suit was viable and that Middleton, to the same extent as Grafe, was negligent in failing to file it before the statute of limitations expired. We are not, however, persuaded that the cases Grafe cites set forth an absolute rule requiring the conclusion that Middleton was an independent intervening cause as a matter of law. Mitchell, for example, recognizes that as a general proposition "it is for the jury to determine whether successor counsel's failure to cure the negligence of the first counsel represents a superseding cause of the plaintiff's injury." Mitchell, 773 N.E.2d at 1195.

To be regarded as a superseding cause negating the claim of proximate or legal cause, the intervening act must be one that is not reasonably foreseeable. Maltman, 84 Wn.2d at 982. Applying this principle in a malpractice case involving successive attorneys, the California Court of Appeals defined the question in this way: "Is the substitution of another lawyer for one whose prior representation of the client in the matter has been negligent such an exceptional

14

circumstance that all duty and responsibility for the prevention of harm normally flowing from the negligence passes to substituted counsel?" Cline, 66 Cal. App. 3d 179. The court answered in the negative. The issue is to be resolved by a trier of fact on the question of foreseeability, not as a matter of law. Cline, 66 Cal. App. 3d at 179-80.

Where the first attorney has explicitly advised the client and successor counsel of the necessity of timely action, there may be no genuine issue of material fact as to foreseeability. An example is Meiners v. Fortson & White, 210 Ga. App. 612, 436 S.E.2d 780 (1993), holding that where the second attorney is "specifically advised by the first attorney" that a party needs to be served and the second attorney has more than six months to accomplish that service, as a matter of law "it is not reasonably foreseeable that the second attorney will fail to cure the first attorney's error and perfect service." Meiners, 436 S.E.2d at 781. Meiners dealt with "an obvious statute of limitation problem of which the second attorney was specifically advised," and distinguished Cline on the basis that it "involved a less noticeable problem of which the second attorney was not aware." Meiners, 436 S.E.2d at 781. Another example is Lockhart v. Grieve, 66 Wn. App. 735, 741, 834 P.2d 64 (1992). In Lockhart, successor attorneys took over the case from Murphy, the original attorney, 90 days before the statute of limitations expired. The successor attorneys failed to make timely service on the defendants. This court affirmed an order dismissing Murphy from the plaintiff's malpractice suit. Pivotal to the analysis in Lockhart was the undisputed fact that

Murphy took care to advise both the plaintiff and the new attorneys of the necessity of timely service within the brief window of time remaining before the statute of limitations expired. Lockhart, 66 Wn. App. at 742.

The present case resembles Cline more than Meiners and Lockhart. Because Grafe did not recognize that Goll's potential claim against Prudential was based on the ABC theory in which attorney fees are damages, he did not realize the statute of limitations on a suit against Prudential was already running. Thus, he did not advise Goll or Middleton that action needed to be taken soon to preserve that claim. Middleton adopted Grafe's conclusion that Goll had not as yet sustained damages as a result of Prudential's negligence. A jury could find that Grafe should reasonably have foreseen that Middleton would adopt Grafe's erroneous conclusion and carry on with the case along the path Grafe had laid out.

Our analysis is consistent with Gordon's expert opinion that Grafe and Middleton committed malpractice as a single continuous course of inaction, making Middleton's negligence a concurrent cause of the damage rather than an independent intervening cause.[2] Gordon opined that Grafe's misunderstanding of the law "not only gave up the most cost-effective, logical opportunity" to toll the statute of limitations by bringing in Prudential as a third party defendant, but also "deterred and burdened" Goll and Middleton from taking corrective action in the year after Goll succeeded in the trial court. A trier of fact could find on this record

---

[2] Clerk's Papers at 238-43.

that either Grafe or Middleton or both were proximate causes of Goll's damage; if both, the apportioning of liability is also a question of fact.

In assessing the case within this case, the reasonable fact finder must determine whether the estate's projected better result—a successful third party suit against Prudential achieving indemnification of Goll's expenses in the Chrisp suit—would more likely than not have occurred if Grafe had either initiated the suit before he withdrew or specifically advised Goll and Middleton that initiating the suit by a specific date was necessary to avoid expiration of the statute of limitations.

We conclude that Grafe has failed to extinguish issues of fact and establish as a matter of law that the successor attorney was an intervening, independent cause.

Reversed.

Becker, J.

WE CONCUR:

Spearman, A.C.J.