

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TAMMY BECK, a personal representative of the Estate of Claud Goll, | No. 72655-2-I |
| Appellant, | DIVISION ONE |
| v. | |
| DARREN E. GRAFE and JANE DOE GRAFE, and the marital community composed thereof, | UNPUBLISHED OPINION |
| Respondents. | FILED: December 14, 2015 |

BECKER, J. — In the case underlying this legal malpractice action, the client relied on counsel's advice that there would still be time to recover from a third party once the case was over. The underlying case was still pending when the client discovered the advice was erroneous and that it was too late to sue the third party. Because the client's estate filed this malpractice action within three years of that discovery, the action is timely. The trial court erred in granting summary judgment on the basis of the statute of limitations.

Orders granting summary judgment are reviewed de novo. This court considers the facts by taking all reasonable inferences in favor of the estate since it is the nonmoving party. Summary judgment will be upheld if the pleadings, affidavits, depositions, and admissions demonstrate that no genuine issue of

material fact exists and the attorney is entitled to judgment as a matter of law. Versuslaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 319-20, 111 P.3d 866 (2005), review denied, 156 Wn.2d 1008 (2006).

The malpractice claim concerns allegedly negligent performance by respondent, attorney Darren Grafe. Grafe represented the late Claud Goll in the contract dispute chronicled in Chrisp v. Goll, 126 Wn. App. 18, 19-22, 104 P.3d 25 (2005), review denied, 156 Wn.2d 1004 (2006).

The background facts, taken in the light most favorable to the estate, began in July 2001 when Goll contracted to purchase Nancy Chrisp's home. A feature of the home that Goll found attractive was a separate guest cottage. Goll withdrew from the purchase and sale agreement when he discovered the cottage was not up to code for a guesthouse. In October 2001, Chrisp sued Goll for defaulting on the contract. Due in part to a drop in market prices, the price Chrisp received when she eventually found another buyer was substantially less than what Goll agreed to pay. Chrisp claimed damages of over $100,000.

Grafe, then an associate at David H. Middleton & Associates, undertook Goll's representation. Goll's exposure arose from the fact that in the contract between Chrisp and Goll, the right boxes had not been checked to ensure that if the buyer defaulted, he would only forfeit the earnest money. On Goll's behalf, Grafe took the position that there had been substantial compliance with the statutory requirements for electing forfeiture of earnest money as a remedy. Grafe's strategy was to limit Chrisp's damages to the earnest money deposit of $2,000.

Goll wanted Grafe to sue Prudential, the firm of realtors who failed to make sure the contract protected him from Chrisp's large damage claim. Goll insisted that the realtors should be made responsible for paying his attorney fees. By letter to Goll on July 5, 2002, Grafe indicated that he planned to file a third party complaint. And Grafe's billing records include charges for work done on a third party complaint.

However, Grafe did not file a third party complaint. In Grafe's opinion, the fees Goll was paying Middleton & Associates were not damages for which Prudential could be held liable. Grafe told Goll he could not sue Prudential until the lawsuit with Chrisp was finished because only then could it be determined whether Goll had suffered any damages as a result of Prudential's role in the transaction.

On May 27, 2003, just months before trial, Grafe informed Goll that he was leaving the Middleton firm. David Middleton assumed Goll's representation. At trial in August 2003, Middleton carried out Grafe's strategy of arguing that the doctrine of substantial compliance limited Chrisp's damages to $2,000. The trial court agreed, dismissed the jury, and awarded attorney fees to Goll. But when Chrisp appealed, this court reversed, holding that the doctrine of substantial compliance did not apply. Chrisp's case against Goll was remanded for trial. Chrisp, 126 Wn. App. at 26.

Goll petitioned for review. The petition was denied on January 10, 2006. This court's mandate issued on March 14, 2006.

3

In May 2008, Middleton died unexpectedly. Middleton's office sent Goll a letter to inform him that the law office would be closing its doors and withdrawing from his case. "It is imperative that you retain new counsel immediately. Please be advised that the Court is in the process of scheduling the trial for this matter." Goll retained Jean Jorgensen. At this point, Goll learned that he could not recover any damages or attorney fees from Prudential because the statute of limitations had run on his claim against Prudential.

Goll, represented by Jorgenson, settled with Chrisp. Goll died in 2009. On August 6, 2010, Jorgenson filed this malpractice action against Grafe on behalf of Goll's estate. According to the estate, Grafe committed malpractice by failing to realize that Prudential damaged Goll in 2001. Grafe's failure to initiate timely action against Prudential, the estate alleges, constitutes negligence.

Grafe's first motion for summary judgment argued that he is entitled to avoid liability because he turned the case over to Middleton before the statute of limitations ran on Goll's claim against Prudential. The trial court granted the motion. This court reversed. "We reverse the dismissal because there are genuine issues of material fact precluding us from holding as a matter of law that the successor attorney was a superseding cause that absolves Grafe of any liability." Beck v. Grafe, noted at 174 Wn. App. 1034, 2013 WL 1460555, at *1, review denied, 178 Wn.2d 1015 (2013).

This appeal arises from Grafe's second motion for summary judgment. The motion argued for dismissal on two grounds: the three-year statute of

limitations in the malpractice case and the dead man's statute. The trial court granted the motion solely on the basis of the statute of limitations.

We address that issue first and reverse the trial court's ruling.

## DISCOVERY RULE

The three-year statute of limitations does not begin to run on an attorney malpractice claim until the client discovers, or in the exercise of reasonable diligence should have discovered, facts giving rise to the cause of action. Quinn v. Connelly, 63 Wn. App. 733, 736, 821 P.2d 1256, review denied, 118 Wn.2d 1028 (1992); Huff v. Roach, 125 Wn. App. 724, 729, 106 P.3d 268, review denied, 155 Wn.2d 1023 (2005). The rule does not require knowledge of the existence of a legal cause of action; instead, the limitations period begins to run when the plaintiff knew or should have known of all essential elements to a cause of action—i.e., duty, breach, causation, and injury. Hipple v. McFadden, 161 Wn. App. 550, 560, 255 P.3d 730, review denied, 172 Wn.2d 1009 (2011).

The present lawsuit was filed in August 2010. Grafe claims the three-year statute of limitations began to run in June 2003 when he withdrew from Goll's case. By that time, Goll could see that Grafe had not sued Prudential, and according to Grafe, Goll needed nothing more to realize that he could not look to Prudential as a source of recovery.

The estate contends the statute of limitations did not begin to run until 2008, when Goll consulted Jorgenson. It was only at this time, according to the estate, that Goll realized Grafe and Middleton had injured him by allowing the statute of limitations to run on a suit against Prudential.

5

The estate is not arguing that the statute of limitations is necessarily tolled until such time as a dissatisfied client obtains other legal counsel and is advised of a cause of action. Cf. Richardson v. Denend, 59 Wn. App. 92, 98, 795 P.2d 1192 (1990), review denied, 116 Wn.2d 1005 (1991). Goll consulted Jorgenson because when Middleton died, he needed another attorney to handle his defense in Chrisp v. Goll. The second trial in that matter was about to begin. Until Middleton died in 2008, Goll had been lulled by Grafe's and Middleton's assurances that he could sue Prudential if Chrisp prevailed. Goll was unaware that the statute of limitations on his claim against Prudential began to run as soon as he incurred attorney fees in the litigation with Chrisp. Goll cannot be charged with knowledge that his claim against Prudential was time barred when his own attorneys were telling him that was not the case. To so hold would ignore the primary reason Washington applies the discovery rule in malpractice litigation: consumers of legal services frequently do not have the means or ability to discover professional malpractice on their own. Peters v. Simmons, 87 Wn.2d 400, 405-06, 552 P.2d 1053 (1976).

Alternatively, Grafe contends the statute of limitations began to run when this court's decision in Chrisp became final. At the latest, that was on March 14, 2006, when the mandate issued. Our opinion confirmed that Goll was exposed to Chrisp's claim of $100,000 in consequential damages, as well as substantial attorney fees. Grafe argues that summary judgment dismissal is supported by Richardson's holding that a client is put on notice of a potential malpractice claim as a matter of law when a court enters an adverse judgment against the client.

In <u>Richardson</u>, a criminal case, the client was found guilty in 1978. Four years later, the client sued his defense attorney for malpractice. His theory was that the attorney had failed to elicit testimony from a witness due to a conflict of interest arising from his representation of that witness in another case. The client claimed the three-year statute of limitations did not begin to run until he conducted independent legal research and learned that the attorney's conduct may have been malpractice. This court affirmed dismissal of the malpractice claim, holding that a judgment—in that case, the judgment of conviction—gives sufficient notice to the client of injury caused by the attorney's errors occurring at trial:

> The discovery rule merely tolls the running of the statute of limitations until the plaintiff has knowledge of the "facts" which give rise to the cause of action; it does not require knowledge of the existence of a legal cause of action itself. In professional malpractice cases, the pivotal factor which tolls the running of the statute of limitations is the absence of knowledge of injury.
>
> Consequently, the discovery rule has consistently been applied by our courts in such actions to toll the statute of limitations until the plaintiff discovers, or should have discovered, his or her *damage* or *injury* resulting from the professional malpractice. Unlike the situation with the provision of other professional services, however, the damages, if any, resulting from the errors or omissions of an attorney allegedly occurring during the course of litigation are embodied in the judgment of a court. The parties to such an action, in turn, are formally advised of the judgment of the court and, hence, receive notification of any damage which results from their attorney's representation. We conclude, therefore, that upon entry of the judgment, a client, as a matter of law, possesses knowledge of all the facts which may give rise to his or her cause of action for negligent representation.

<u>Richardson</u>, 59 Wn. App. at 95-97 (citations and footnote omitted).

The holding of <u>Richardson</u> does not help Grafe. Grafe's errors and omissions are not "embodied in the judgment" in <u>Chrisp</u>. The estate does not

7

allege that Grafe and Middleton mishandled strategy against Chrisp. The estate's allegation is that Grafe and Middleton failed to timely sue Prudential, a third party who should have been held liable to Goll for the losses he suffered in Chrisp. The issue of Prudential's liability to Goll was not raised in the course of the Chrisp litigation. Therefore, it cannot be said that this court's decision in Chrisp gave notice to Goll that Grafe and Middleton mishandled his claim against Prudential. Taken in the light most favorable to the estate, the record indicates that until 2008, Goll had no reason to know he had been injured by Grafe's and Middleton's failure to sue Prudential. A jury could find that the discovery rule tolled the three-year statute of limitations until 2008, so this suit, filed in 2010, is timely.

CONTINUOUS REPRESENTATION RULE

The estate argues that the statute of limitations was tolled not only by the discovery rule but also by the continuous representation rule. Because this issue may arise at trial, we elect to explain now why it does not support tolling in this case.

The continuous representation rule "tolls the statute of limitations until the end of an attorney's representation of a client in the same matter in which the alleged malpractice occurred." Janicki Logging & Constr. Co. v. Schwabe, Williamson & Wyatt, P.C., 109 Wn. App. 655, 661, 37 P.3d 309 (2001), review denied, 146 Wn.2d 1019 (2002). In Janicki, the court cited three policy reasons for adopting the rule in Washington. First, the continuous representation rule avoids disruption of the attorney-client relationship and gives attorneys a chance

8

to remedy mistakes before being sued. Second, it prevents attorneys from defeating a malpractice claim by continuing to represent a client until the statute of limitations has expired. Third, the rule helps to avoid speculative malpractice claims. Janicki, 109 Wn. App. at 662. The continuous representation rule must be narrowly construed. Cawdrey v. Hanson Baker Ludlow Drumheller, P.S., 129 Wn. App. 810, 120 P.3d 605 (2005), review denied, 157 Wn.2d 1004 (2006).

According to the estate, the continuous representation rule tolls the statute of limitations throughout the entire period that Goll retained the services of Middleton & Associates:

> The continuous representation rule should apply to toll the statute of limitations because Goll never stopped retaining the services of Middleton & Associates to defend him in the action brought by Ms. Chrisp. When Grafe left that law firm, Middleton took over representation of the case from his associate. The litigation with Ms. Chrisp continued through the end of Middleton & Associate's representation in 2008.[1]

The estate fails to show how the continuous representation rule can toll the statute of limitations for a malpractice claim against an attorney who has ceased to represent the client. The policies identified in Janicki would not be served by extending the rule in that manner. After Grafe withdrew in 2003, he was no longer in a position to correct his mistake or to prolong the case to defeat a potential malpractice claim.

---

[1] Appellant's Reply at 3.

## DEAD MAN'S STATUTE

Grafe contends that even if the estate's action is timely, summary judgment was properly granted because the estate is precluded by the dead man's statute from offering evidence necessary to prove the malpractice claim. Although the trial court found this argument unpersuasive, a trial court's decision may be affirmed on appeal if it is sustainable on any theory within the pleadings and the proof. LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027, cert. denied, 493 U.S. 814 (1989).

Goll's daughter, Tammy Beck, went with Goll to meetings with Grafe and Middleton. Her testimony about the conversations between Goll and the lawyers provides evidence that Goll repeatedly asked about suing Prudential and was repeatedly advised that suit against Prudential was premature. Grafe contends that Beck can offer no admissible evidence of what Goll knew or what Grafe told Goll.

The dead man's statute provides as follows:

No person offered as a witness shall be excluded from giving evidence by reason of his or her interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his or her credibility: PROVIDED, HOWEVER, That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or limited guardian of the estate or person of any incompetent or disabled person, or of any minor under the age of fourteen years, then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased, incompetent or disabled person, or by any such minor under the age of fourteen years: PROVIDED FURTHER, That this exclusion shall not apply to parties of record who sue or defend in a

10

representative or fiduciary capacity, and have no other or further interest in the action.

RCW 5.60.030.

The statute prohibits interested parties from testifying about transactions they had with the deceased. It bars the admission of any statement made by the deceased to an interested party, or in his or her presence, if the "testimony is adverse to the deceased and the opposing party claims through the deceased's estate." Thor v. McDearmid, 63 Wn. App. 193, 199, 817 P.2d 1380 (1991).

Grafe argues that Beck's testimony concerns transactions between herself and her father. Grafe suggests that testimony about a "transaction" is excluded if the deceased, if still alive, could contradict the offered testimony from his own personal knowledge. This is not a complete statement of the law. Grafe cites Denis v. Metzenbaum, 124 Wash. 86, 213 P. 453 (1923), but the authority Denis cites and relies on is In re Cunningham's Estate, 94 Wash. 191, 161 P. 1193 (1917). Cunningham's Estate states that the statute's purpose is to shield an estate from the enforcement of claims that otherwise could not be defended against. The dead man's statute "is not to be used as a sword to deprive the estate of beneficial evidence because death has deprived the estate of testimony that otherwise would be admissible." Cunningham's Estate, 94 Wash. at 193.

Grafe proposes to use the statute to deprive Goll's estate of beneficial evidence that would be admissible if Goll were still alive. The statute does not support Grafe's position. Beck's testimony does not pertain to a transaction between herself and her father, nor does it contain statements that are adverse

11

to her father or his estate.  We conclude the dead man's statute does not bar admission of Beck's testimony.

Reversed.

WE CONCUR:

Becker, J

Spearman, C.J.