IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| M.G., SAMANTHA GERLACH and SUZANNE GERLACH, | No. 87083-1-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| BAINBRIDGE ISLAND SCHOOL DISTRICT #303, a municipal corporation, WASHINGTON STATE HOSA, a non-profit corporation, NASZYA BRADSHAW an individual, ELEANOR WILSON an individual AND DOES 1-100, | |
| Respondents. | |

COBURN, J. — Plaintiffs appeal CR 11 sanctions imposed against them, the trial court's denial of their motion for disqualification, and the court's denial of plaintiffs' motion for reconsideration. The rulings challenged in this appeal occurred while another appeal was pending in this same matter, but are now resolved in companion case M.G.,[1] v. Bainbridge Island School District, No. 86846-2-I (Wash. Mar. 24, 2025).

We affirm.

---

[1] In the companion case we reversed the trial court's order amending the case caption to use M.G.'s full name. M.G., slip op. at 15-16. The case's caption, thus, reverts to the initial case caption, which we follow in this opinion. RAP 3.4.

FACTS

The facts underlying this case can be found in M.G., slip op. at 4-10. We repeat those facts and procedural history necessary to address issues presented in this appeal. In M.G., we affirmed CR 11 sanctions against Attorney Marcus Gerlach, who represents plaintiffs M.G., Samantha Gerlach and Suzanne Gerlach.[2] M.G., slip op. at 31. We also held that plaintiffs waived any claim that the trial judge should have recused because of an apparent conflict of interest, and also rejected plaintiffs' argument that the judge was biased as none of their arguments established actual prejudice on the part the judge. M.G., slip op. at 39.

In M.G., we upheld the trial court's dismissal of all claims against Eleanor Wilson under Washington State's Uniform Public Expression Protection Act (UPEPA), which is designed to combat the problem of strategic lawsuits against public participation (anti-SLAPP law). Thurman v. Cowles Co., No. 102791-5, slip op. at 6, 2025 WL 338065 (Wash. Jan. 30, 2025), https://www.courts.wa.gov/opinions/pdf/1027915.pdf. The CR 11 sanctions we upheld in M.G. were based on assertions made in plaintiffs' motion to strike Wilson's declaration and supplemental memorandum in support of her UPEPA motion. M.G., slip op. at 9.

In the plaintiffs' motion to strike, "Attorney Gerlach wrote that 'Wilson ***wanted*** a rape culture on Bainbridge Island to support her fantasies of sexual assault and 'a hotbed of attempted youth social justice.'" M.G., slip op. at 30. After Wilson's counsel notified Attorney Gerlach that he had violated CR 11 and demanded that the statement,

---

[2] We refer to Marcus Gerlach as Attorney Gerlach for clarity because he shares the same last name with Samantha Gerlach and Suzanne Gerlach.

among others, relating to wanting a rape culture be removed and if he did not file a corrected brief a motion for sanctions would follow. M.G., slip op. at 30.

Attorney Gerlach re-filed its motion labeling it an "ERRATA FILING" without any further explanation. The statement relating to rape culture was changed to:

> A student **_desired_** a rape culture on Bainbridge Island. This could support fantasies of sexual assault and "a hotbed of attempted youth social justice."

M.G., slip op. at 30. Attorney Gerlach did not move to remove or seal the original pleading and did not identify what had been changed from the original. M.G., slip op. at 30. As a sanction, the court awarded Wilson attorney fees against Attorney Gerlach, but reserved on a request to impose punitive sanctions against plaintiffs. We concluded that the record supported the trial court's findings that Attorney Gerlach made the assertion without factual or legal bases, and that he did not conduct a reasonable inquiry into the factual basis of the claims. M.G., slip op. at 33. We held that the trial court did not abuse its discretion in imposing the CR 11 sanction. After sanctioning Attorney Gerlach, the trial court ordered him to file notice of compliance with this award within 30 days of the order.

Plaintiffs appealed the court's order granting CR 11 sanctions and awarding attorney fees. Later, the next month, plaintiffs filed a "NOTICE OF PAYMENT OF COURT'S IMPROPER AWARD OF FEES' ORDER OF SEPTEMBER 6, 2023 TO DISMISSED PARTY." The five-page pleading included one sentence on page 2 that provided notice of payment. The rest of the pleading takes issue with the trial court's CR 11 findings of fact and conclusions of law that formed the very basis of why the court ordered plaintiffs to file a notice of payment. In defense of their previous assertion that

3

was subject of the CR 11 sanction, plaintiffs asserted: "A reasonable conclusion was that Defendant Eleanor Wilson wanted a rape culture on Bainbridge Island to support the January 30, 2021 March/Rally." This prompted Wilson to file a second motion for CR 11 sanctions.

The same day Wilson filed her motion, plaintiffs filed a motion for disqualification of the trial judge and recession of orders. Plaintiffs previously requested the trial judge recuse herself by way of a motion for reconsideration that was denied on June 23, 2023. As we observed in M.G., plaintiffs could have but did not appeal that order. M.G., slip op. at 36. HOSA filed an opposition to plaintiffs' motion for disqualification and recession of orders.

Plaintiffs also filed a second motion for CR 11 sanctions against Wilson asserting that her CR 11 motion is not warranted under law, not well grounded in fact and not based upon a reasonable inquiry.[3]

The court held a hearing to consider all the motions. The court, observing that it had previously denied a similar motion on June 23, 2023, again denied plaintiffs' motion for disqualification. The court also issued written findings of fact and conclusions of law, and granted Wilson's CR 11 motion and denied plaintiffs' CR 11 motion. The court awarded Wilson attorney fees and also imposed a $1,000 punitive sanction against plaintiffs to be paid to the court registry, where the funds would remain until further court order.

Plaintiffs appeal.

---

[3] Plaintiffs, in M.G., appealed the denial of their first cross-motion for CR 11 sanctions, but failed to properly brief the issue for consideration. M.G., slip op. at 34.

DISCUSSION

Judicial Disqualification

Plaintiffs assign error to the trial court's denial of their motion for disqualification, arguing that the trial judge was required to recuse herself. As a remedy, they requested below that the trial judge vacate all its orders. On appeal, plaintiffs ask this court to reverse the order denying disqualification, the CR 11 sanction, and the award of attorney fees and costs.

The arguments plaintiffs raise in their motion for disqualification are mostly the same arguments previously raised and rejected in M.G., slip op. at 33. The trial court declined revisiting arguments it had previously rejected. But it did address what it believed were some "new" arguments or allegations.

In M.G., plaintiffs had argued that the "trial court should have recused itself because about 10 years earlier, while the judge was in private practice, she represented the City of Bainbridge Island in an acrimonious dispute with Suzanne and [Marcus] Gerlach, who applied for a city permit." M.G., slip op. at 34-35. In this motion, plaintiffs submitted a declaration from Suzanne Gerlach with an exhibit that previously had not been presented relating to the City's denial of an application for a buoy permit by Suzanne and Marcus Gerlach (the Gerlachs).

Plaintiffs contend that the trial judge's impartiality in the instant matter can be reasonably questioned because of her actions when she represented the City in the permit dispute. This exhibit is a pre-hearing brief dated June 22, 2011, signed by the trial judge (then attorney). The trial judge (then attorney) was hired to represent the City after the Gerlachs appealed a city staff's decision to deny them a buoy permit. The brief

quotes a Bainbridge Island City Code that defines the construction limit line for Eagle Harbor that restricts how far a buoy may be located off shore. The brief said the construction line limit is defined on a U.S. Army Corps Engineers 1939 drawing approved by the Secretary of War. The Gerlachs administratively appealed the denial of the permit and produced evidence that "the official" 1939 map did not include a construction line limit. The parties settled prior to a scheduled hearing before a hearing examiner and the Gerlachs' application for permit was granted through another process. According to the plaintiffs, the Gerlachs then sued the City and the city's planner, which a judge dismissed based in part on a March 2012 declaration of the trial judge (then attorney in the permit matter). The declaration stated:

> Particularly at the outset, there were significant concerns about the construction limit line, the impacts the proposed buoy would have on navigation, and the depth of the proposed location. There were also concerns about the proposed buoy swinging onto the neighbors' tidelands. For all of these reasons, the City denied the Gerlachs' permit application. I saw no evidence that this was done in bad faith or with improper motive.
> ….
> Had their appeal gone to the Hearing Examiner, based upon the evidence and my experience with such matters, I believe that the City would have prevailed–and been affirmed upon judicial review.

Plaintiffs contend that the combination of the pre-hearing brief and the declaration somehow establishes that the trial judge (then attorney) "signed a declaration claiming a false [construction limit line]" because the 2011 pre-hearing brief states that the "evidence will show that the proposed Gerlach buoy would be located well beyond this line." Suzanne Gerlach asserts that "I was required to spend approximately $100,000.00 for a case that was improperly dismissed based upon what appeared to be a false and misleading declaration." Suzanne Gerlach claims that because of this, "I do not believe that I can receive a fair, impartial and unbiased trial."

6

A litigant who proceeds to a trial or hearing before a judge despite knowing of a reason for potential disqualification of the judge waives the objection and cannot challenge the court's qualifications on appeal. Buckley v. Snapper Power Equip. Co., 61 Wn. App. 932, 939, 813 P.2d 125 (1991). As we stated in M.G.,

> The trial court, as presiding judge, heard the plaintiffs' February 17, 2023, motion. Attorney Gerlach requested the presiding judge to sign orders directing social media companies to produce records. The court denied the request. Later in the hearing, counsel for BISD asked if the court was considering whether to assign the case to a particular judge. The court responded that it would be doing that later that day. It observed and stated "I'm next up on the rotation, so I think I'm probably next up, so it will probably be me." At no time did Attorney Gerlach ask the trial court to recuse itself or articulate a concern that the trial court could not be fair.

M.G., slip op. at 35. In the instant case, the trial court found that plaintiffs raised no issues or concerns with the court until after they were dissatisfied with a decision that had been issued, and denied the motion. Even assuming that a sufficient basis may have existed to warrant recusal, which is not demonstrated by the record, we agree with the trial court that plaintiffs waived such a challenge because they were aware of the basis of this challenge before asking the court to grant his proposed order on a motion for evidence on February 17, 2023.

We need not address plaintiffs' remaining arguments that were previously addressed in M.G. Most of these arguments were raised in the prior motion for recusal that were denied in the June 23, 2023 order that plaintiffs did not appeal in M.G. slip op. at 36. For example, plaintiffs cite to exhibits of court records that show the trial judge in 2017 made a ruling in a criminal case where witnesses were officers with the Bainbridge Island Police Department. These exhibits were submitted as part of plaintiffs' motion for reconsideration that the trial court rejected in its June 23 order. Plaintiffs also cite to an

exhibit of a court record where the trial judge in 2023 granted a City of Bainbridge Island motion to dismiss claims that were time-barred under the statute of limitations. Plaintiffs had submitted this exhibit as part of its motion for reconsideration of the court's dismissal of claims against HOSA under CR 12(b)(6). The denial of that motion was part of the appeal in M.G., slip op. at 29.

The law of the case doctrine generally precludes this court from reviewing issues that a party raised, or could have raised, in a prior appeal from the same case. State v. Worl, 129 Wn.2d 416, 424-25, 918 P.2d 905 (1996). "The doctrine serves to 'promote[ ] the finality and efficiency of the judicial process by protecting against the agitation of settled issues.'" State v. Harrison, 148 Wn.2d 550, 562, 61 P.3d 1104 (2003) (alteration in original) (internal quotation marks omitted) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988)). Application of the doctrine is discretionary, not mandatory. Folsom v. County of Spokane, 111 Wn.2d 256, 264, 759 P.2d 1196 (1988). We will reconsider an identical legal issue in a subsequent appeal of the same case when the holding of the prior appeal is clearly erroneous and the application of the doctrine would result in manifest injustice. Id. We do not find that to be the case here.

In any event, in order to prevail on its motion for disqualification, plaintiffs were required to demonstrate the trial judge's actual or potential bias before an appearance of fairness claim will succeed. State v. Chamberlin, 161 Wn.2d 30, 37, 162 P.3d 389 (2007). As we explained in M.G., plaintiffs had exercised their statutory right to remove a different judge before appearing before the trial judge on February 17, 2023. M.G. slip op. at 36.

8

This court reviews trial judges' decisions whether to recuse themselves to determine if the decision was manifestly unreasonable or based on untenable reasons or grounds. Kok v. Tacoma Sch. Dist. No. 10, 179 Wn. App. 10, 23-24, 317 P.3d 481 (2013).

Disqualification of a single judge without a showing of prejudice is a right granted to parties by statute. Harbor Enters., Inc. v. Gudjonsson, 116 Wn.2d 283, 285, 803 P.2d 798 (1991); see RCW 4.12.050. After exercising the statutory right to peremptory removal of one judge, a party may not disqualify a second judge for prejudice by simply filing a second motion and affidavit under RCW 4.12.050. State v. Dominguez, 81 Wn. App. 325, 328, 914 P.2d 141 (1996). A party claiming bias or prejudice must support the claim; prejudice is not presumed as it is under statutory right to peremptory removal. Id. at 328-29. If the party shows actual prejudice on the part of a judge, the court must consider a motion for disqualification even if the statutory right has been exhausted. State v. Detrick, 90 Wn. App. 939, 942-43, 954 P.2d 949 (1998).

Even considering the fact that the trial judge presided over matters involving the City of Bainbridge Island after having represented the city in the land use matter about 10 years prior, plaintiffs do not show how this demonstrates prejudice on the part of the trial judge in this matter. Under the Code of Judicial Conduct, designed to provide guidance for judges, "[j]udges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned." State v. Gamble, 168 Wn.2d 161, 188, 225 P.3d 973 (2010) (citing CJC Canon 3(D)(1)) (internal quotation marks omitted) (citation omitted). The facts presented by plaintiffs do not establish a circumstance where the trial judges' impartiality might reasonably be questioned.

We acknowledge that plaintiffs do appear to raise a new argument in passing: that the trial court "admitted to 'community involvement' regarding SAVIS[sic]-female victims assault nonprofit,'" and claiming, without any support in the record, that this evidence was not previously available. First, plaintiffs do not explain what "SAVIS" [4] [sic] is, do not cite to the record, and do not present any substantive argument. Second, plaintiffs did not raise this argument in its motion for disqualification. They raised it in their motion for reconsideration, which was denied. The court denied the motion for reconsideration because plaintiffs did not establish that the "new" evidence was not previously available. Though plaintiffs assign error to the denial of their motion for reconsideration, they fail to present any substantive argument on appeal as to why the court erred in denying its motion for reconsideration. If an appellant's brief does not include argument or authority to support its assignment of error, the assignment of error is waived. Smith v. King, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986).

The trial court did not abuse its discretion in denying the motion for disqualification.

## CR 11

Plaintiffs make several arguments on appeal as to why the court's imposition of CR 11 sanctions was improper. We address each in turn.

We leave the decision to impose CR 11 sanctions to the sound discretion of the trial court. Harrington v. Pailthorp, 67 Wn. App. 901, 910, 841 P.2d 1258 (1992). We will

---

[4] SAIVS appears to stand for an organization called Special Assault Investigation and Victim's Services. Plaintiffs presented an online bio of the trial judge when she was a practicing attorney where "Friends of SAIVS" was listed under "Community Involvement." And that SAIVS' website listed multiple contact information for victim support resources, including Kitsap Sexual Assault Center. But neither SAIVS or the Kitsap Sexual Assault Center is a party in this case.

not overturn CR 11 sanctions absent an abuse of discretion. Id. "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds or reasons." In re Guardianship of Lasky, 54 Wn. App. 841, 854, 776 P.2d 695 (1989).

Our Supreme Court has previously held that "[t]he purpose behind CR 11 is to deter baseless filings and to curb abuses of the judicial system." Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219, 829 P.2d 1099 (1992) (emphasis omitted). CR 11 imposes three duties on attorneys: (1) the duty to conduct a reasonable inquiry into the facts supporting the document; (2) the duty to conduct a reasonable inquiry into the law, such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and (3) the duty not to interpose the document for purposes of delay, harassment, or increasing the costs of litigation. Watson v. Maier, 64 Wn. App. 889, 896, 827 P.2d 311 (1992). CR 11 deals with two types of filings: baseless filings and filings made for improper purposes. MacDonald v. Korum Ford, 80 Wn. App. 877, 883, 912 P.2d 1052 (1996). A filing is "'baseless'" when it is "'(a) not well grounded in fact, or (b) not warranted by (i) existing law or (ii) a good faith argument for the alteration of existing law.'" Id. at 883-84. A trial court uses an objective standard to evaluate the reasonableness of an attorney's inquiry. Bryant, 119 Wn.2d at 220. "[A] trial court must make findings specifying the actionable conduct." Stiles v. Kearney, 168 Wn. App. 250, 262, 277 P.3d 9 (2012).

In the instant case, the trial court entered several findings of fact to which plaintiffs do not assign error. Unchallenged findings of fact are verities on appeal. Fed. Fin. Co., Inc. v. Solomon, 7 Wn. App. 626, 629, 501 P.2d 627 (1972). The court found that in the notice of payment, "attorney Gerlach continued to make the same or very

11

similar assertions for which he was previously sanctioned." As the trial court found, plaintiffs turn to Wilson's use of the word "'want' in an email and in a social media post (e.g., "I want to help" and "I'd want ALL of your input…')" to argue that "[a] reasonable conclusion was that Defendant Elanor Wilson wanted a rape culture on Bainbridge Island to support the January 30[,] 2021 March/Rally." The court found that "no facts are offered to support this conclusion that a person who 'wants to help' actually wants a 'rape culture' to 'support [their] fantasies of sexual assault.'" On appeal, plaintiffs cite to the same record and evidence that was before us in M.G., slip op. at 32.

The trial court found that Attorney Gerlach "provided no factual basis for the statements at issue in this motion, nor did he explain what kind of investigation he did prior to making those statements." This finding is unchallenged. The trial court also found that these "statements were completely unnecessary to fulfill the Court's order requiring 'notice of compliance' and served no legitimate purpose." This finding is unchallenged. Plaintiffs did assign error to the trial court conclusion that plaintiffs could not make "reasonable conclusions" by reciting "Wilson's own words." But that is a mischaracterization of the court's findings and conclusions.

The court found that Attorney Gerlach asserted that "Wilson 'wanted a rape culture' because Ms. Wilson used the word 'want' in an email and in a social media post (e.g., "I want to help" and "I'd want ALL of your input …').'" Plaintiffs previously made the same unpersuasive argument in M.G.—that Wilson "actually used the word, 'want' four times in her targeted attack on M.G." M.G., slip op. at 32. Wilson's statements were in conjunction of expressing a desire to help victims of sexual assault to tell their stories. M.G., slip op. at 21-22. It is in discussing how Wilson actually used the word "want" that

12

the court found

> From this attorney Gerlach argues that "[a] reasonable conclusion was that <u>Defendant Eleanor Wilson wanted a rape culture</u> on Bainbridge Island to the support the January 30 2021 March/Rally." The "reasonable conclusion" Attorney Gerlach offers is not persuasive–no facts are offered to support this conclusion that a person who "wants to help" actually wants a "rape culture" to "support [their] fantasies of sexual assault."

Upon review of the trial court's findings, and after reviewing the entire record before us, we conclude that the trial court did not abuse its discretion in imposing CR 11 sanctions because doing so was manifestly reasonable and based on tenable grounds.

Plaintiffs also raise some procedural arguments by way of its motion seeking CR 11 sanctions against Wilson. Plaintiffs first contend that Wilson failed to provide proper notice before filing her second CR 11 motion. Setting aside the question of whether lack of proper notice could even be a basis as to plaintiffs' own CR 11 sanction against Wilson, we address the substantive merits of the argument.

Under Washington's CR 11, attorneys and judges who perceive a possible violation of CR 11 must bring it to the offending party's attention as soon as possible. <u>Biggs v. Vail</u>, 124 Wn.2d 193, 198, 876 P.2d 448 (1994). Without timely notice, CR 11 sanctions are unwarranted. <u>Id.</u> The purpose of this requirement is to give the offending party an opportunity to mitigate the sanction by amending or withdrawing the baseless filing. <u>Id.</u> Another reason is to deter the offending party from submitting additional baseless filings. <u>Id.</u> "[W]e find that notice in general that sanctions are contemplated is sufficient for the later imposition of CR 11 sanctions." <u>Id.</u> at 199.

Here, as we discussed in <u>M.G.</u>, slip op. at 30, Wilson first notified Attorney Gerlach of potential CR 11 sanctions due to statements asserting Wilson wanting a rape culture. The notice advised Attorney Gerlach that by failing to file a corrected brief with

13

the statements removed, a motion for sanctions would follow. M.G., slip op. at 30-31. Plaintiffs were given an opportunity to amend or withdraw their offending pleading. Plaintiffs were well aware at the time they filed their "Notice of Payment" of the attorney fee award for the first CR 11 sanction asserting that Wilson wanted a rape culture without a factual basis or reasonable investigation had been found by the trial court to be improper. Nevertheless, plaintiffs continued to argue that the first CR 11 sanction was wrong and asserted that "[a] reasonable conclusion was that Defendant Eleanor Wilson wanted a rape culture on Bainbridge Island to Support the January 30[,] 2021 March/Rally."

Wilson's first notice to plaintiffs of a potential CR 11 sanction served the purpose giving the offending party an opportunity to mitigate the sanction by amending or withdrawing the baseless filing. The fact that it did not successfully deter the offending party from submitting additional baseless filings, does not mean plaintiffs did not receive proper "notice" as contemplated for CR 11 sanctions. See Biggs, 124 Wn.2d at 199. The trial court did not err in rejecting plaintiffs notice argument.

The second procedural argument plaintiffs raise is that Wilson's CR 11 motion is not well grounded in fact, not based upon a reasonable inquiry and not warranted by existing law because Wilson was dismissed from this case on July 19, 2023, the day the court granted the UPEPA motion. Again, setting aside the question of whether this would be a basis for a CR 11 sanction against Wilson, we address the merits of the argument that Wilson could not bring a CR 11 motion as a dismissed party.

Plaintiffs first argue that the trial court's ruling violated RCW 4.105.030, which provides, in relevant parts:

(3) Except as otherwise provided in subsections (5), (6), and (7) of this section, if a party appeals from an order ruling on a motion under RCW 4.105.020, all proceedings between all parties in the action are stayed. The stay remains in effect until the conclusion of the appeal.

….

(7) During a stay under this section, the court for good cause may hear and rule on:
(a) A motion unrelated to the motion under RCW 4.105.020;

The CR 11 motion is a motion unrelated to the UPEPA motion under RCW 4.105.020. The record establishes that the trial court had good cause to rule on the motion. Also, a trial court has authority to hear and determine post-judgment motions authorized by the civil rules. RAP 7.2(e)(1). Here, the court's CR 11 sanctions do not constitute a "judgment on the merits of an action. 'Rather, it requires the determination of a *collateral issue*: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.'" See Biggs, 124 Wn.2d at 198 (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)).

Because the court's decision to rule on and issue CR 11 sanctions does not have any effect on the prior decision on appeal, the motion and ruling were permissible. Moreover, under RAP 7.2(c), the trial court's previous ruling on and issuance of CR 11 sanctions permits the court to maintain authority in enforcing its previous rulings. This includes re-sanctioning Attorney Gerlach for restating the same baseless assertions that led to his original CR 11 sanction.

On appeal, plaintiffs generally cite caselaw regarding mootness without ever applying the law to the facts of this case to explain how Wilson's CR 11 motion was moot. Failure to present any substantive argument is not sufficient to warrant review. See RAP 10.3(a)(6) (requiring an appellant's brief to provide "argument in support of the

issues presented for review, together with citations to legal authority and references to relevant parts of the record").

Next, plaintiffs maintain on appeal that Wilson did not have "standing" to bring her CR 11 motion. This is another argument plaintiffs raised below as part of their motion for CR 11 sanctions against Wilson. "Standing refers generally to a party's right to bring a legal claim," and it is "not intended to be a 'high bar' to overcome." Wash. Bankers Ass'n v. Dep't of Revenue, 198 Wn.2d 418, 455, 495 P.3d 808 (2021) (citing Wash. State Hous. Fin. Comm'n v. Nat'l Homebuyers Fund, Inc., 193 Wn.2d 704, 711-12, 445 P.3d 533 (2019)). CR 11 is not a basis for a cause of action to bring a legal claim. It is not altogether clear if plaintiffs use the term "standing" in the traditional legal sense.

Plaintiffs' reliance on State ex rel. Quick-Ruben v. Verharen, 136 Wn.2d 888, 969 P.2d 64 (1998) is misplaced. Plaintiffs' reliance suggests that if a party does not have standing to bring a claim, they cannot "assert a lawful interest under CR 11." In Quick-Ruben, a losing candidate for election to superior court brought a private quo warranto action asserting entitlement to the constitutional office as opposed to the election winner. Id. at 891. The winning candidate filed an answer raising affirmative defenses including lack of standing. Id. at 892. The trial court agreed that the losing candidate brought his claim prematurely by commencing action before the winner was sworn in for the term of office to which he had been elected. The court dismissed the case and awarded attorney fees under CR 11 to the winning candidate after all claims against him were dismissed. Id.

In the instant case, Wilson responded to plaintiffs' suit, but successfully motioned

for the court to dismiss all claims under UPEPA. Wilson moved for CR 11 sanctions prior to the court issuing its dismissal order, but the court did not grant the order until after claims against Wilson had been dismissed. Regardless, Quick-Ruben does not hold that there must be an active pending action at the time a court may award CR 11 sanctions. Nothing in the language of CR 11 requires such a reading. The rule provides that

> [i]f a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

CR 11(a)(4). A reading of the plain language of the rule indicates that a CR 11 motion is not necessarily tied to the timing of when claims are dismissed, as suggested by plaintiffs. The two other cases plaintiffs cite are unrelated to CR 11 sanctions.[5] Plaintiffs fail to cite any authority to support that Wilson could not motion for CR 11 sanctions against plaintiffs. Where a party fails to cite to relevant authority, we generally presume that the party found none. State Constr., Inc. v. City of Sammamish, 11 Wn. App. 2d 892, 906, 457 P.3d 1194 (2020) (citing Edmonds Shopping Ctr. Assocs. v. City of Edmonds, 117 Wn. App. 34, 353, 71 P.3d 233 (2003)).

Plaintiffs do not, otherwise, present any argument as to why the trial court erred in denying their motion for CR 11 sanctions against Wilson.

Lastly, plaintiffs argue that the trial court erred in applying the wrong legal standard concluding that "[o]nce a court determines that CR 11 has been violated, the

---

[5] Bloome v. Haverly, 154 Wn. App. 129, 140, 225 P.3d 330 (2010); Osborn v. Grant County, 130 Wn.2d 615, 631, 926 P.2d 911 (1996).

imposition of sanctions is mandatory." Thus, plaintiffs argue, the court did not apply CR 11 as written. Plaintiffs are correct that the applicable version of CR 11 makes the imposition of sanctions permissive. See Biggs, 124 Wn.2d at 199 (explaining that former CR 11 stated that upon violation of the rule "the court ... shall impose ... an appropriate sanction"). However, the trial court in the instant case expressly stated that "even if sanctions were not mandatory the Court finds that they are appropriate in this case." Given the fact the court plainly indicated that it would exercise its discretion and impose the sanctions, we do not find this to be a basis that warrants reversal.

Attorney Fees

Plaintiffs and Wilson request attorney fees on appeal under RAP 18.1.

RAP 18.1(a) authorizes an award of attorney fees if allowed by "applicable law." "A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party is the substantially prevailing party." Hwang v. Mahill, 103 Wn. App. 945, 954, 15 P.3d 172 (2000). Attorney fees on appeal "are awardable in the court's discretion," and subject to the party's compliance with RAP 18.1. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 825, 828 P.2d 549 (1992).

CR 11 provides:

> If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

Because Wilson is the prevailing party on her CR 11 motion, we order Attorney

Gerlach to pay Wilson her reasonable attorney fees, subject to her further compliance with RAP 18.1(d).

HOSA also requests an award of attorney fees and costs from defending this appeal as sanctions for Gerlach's frivolous appeal under RAP 18.9. HOSA cites to Kinney v. Cook, 150 Wn. App. 187, 195, 208 P.3d (2009), in support of its argument, which provides that appropriate sanctions can include an award of attorney fees and costs to the opposing party.

RAP 18.9(a) authorizes the appellate court, on its own initiative or on motion of a party, to order a party or counsel who files a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." RAP 18.9(a). "Appropriate sanctions may include, as compensatory damages, an award of attorney fees and costs to the opposing party." Yurtis v. Phipps, 143 Wn. App. 680, 696, 181 P.3d 849 (2008) (citing Rhinehart v. Seattle Times, Inc., 59 Wn. App. 332, 342, 798 P.2d 1155 (1990)). "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal." Lutz Tile, Inc. v. Krech, 136 Wn. App. 899, 906, 151 P.3d 219 (2007). Furthermore, all doubts as to whether an appeal is frivolous are resolved in favor of the appellant. Id.

Despite the fact all claims against HOSA had been dismissed at the time plaintiffs filed their second motion for disqualification, their motion requested the court to vacate all its orders. This included the order dismissing all claims against HOSA. It is in this circumstance that HOSA filed a brief opposing plaintiffs' February 13, 2024, motion

for disqualification.

Plaintiffs were aware at the time they filed their motion for disqualification that they had already previously made the same arguments to the trial court. Though the trial court declined to revisit the same arguments and allegations previously made, the trial court acknowledged there were some "new" arguments or allegations. As discussed above, plaintiffs submitted a new exhibit to support its motion. It follows that plaintiffs could believe appealing the denial of the motion of disqualification was sufficiently different than its previous appeal. Also, plaintiffs did not have the benefit of our ruling in M.G., slip op. at 41, prior to filing its notice of appeal in this matter. Because all doubts as to whether an appeal is frivolous are resolved in favor of the appellant, we decline to award HOSA reasonable attorney fees and costs under RAP 18.9(a).

We affirm.

_____
Coburn, J.

WE CONCUR:

_____        _____
Bowman, J.                              Hazelrigg, A.C.J.